SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Dion E. Robinson** (A-40-15) (076267)

**Argued January 4, 2017 -- Decided May 1, 2017**

**Patterson, J., writing for a unanimous Court.**

In this appeal as of right, the Court considers whether the protective sweep exception to the warrant requirement applies to a police officer's search of a vehicle's passenger compartment in the wake of a traffic stop.

After observing a driving pattern he considered unsafe in an area associated with drug activity, Officer Ceci conducted a motor vehicle stop. The driver was defendant Dion Robinson, the front seat passenger was Catilya Carson, the left-rear-seat passenger was Marcus Sanders, and the right-rear-seat passenger was Terron Henderson.

Officer Ceci asked defendant for his license, registration, and insurance. Defendant misidentified himself, stated that his license was suspended, and provided the registration and insurance. Henderson misidentified himself as defendant. Carson and Sanders accurately identified themselves and presented identification cards but no driver's licenses. Defendant said that the car was owned by his friend, but that he did not know the friend's name.

Officer Ceci was advised by the dispatcher that defendant and Henderson each had an outstanding warrant and that defendant was known to carry weapons. Officer Ceci confirmed that information and found that Henderson also had a "caution for weapons." He called for backup; a sergeant and three officers joined him at the scene.

The officers directed defendant and Henderson out of the car, handcuffed them, and arrested them. A search incident to arrest revealed no weapons on either. Some of the officers were assigned to watch defendant and Henderson, who stood handcuffed on the side of the highway and were not permitted to return to the vehicle.

Next, the officers detained, but did not arrest, Carson and Sanders, on whom the officers found no weapons. Carson and Sanders were then directed to stand on the side of the road, monitored by officers. Officer Ceci did not observe Carson or Sanders make any motion that suggested that either was reaching for a weapon, attempting to hide any object, or resisting the directions of the officers. Carson and Sanders were not allowed access to the vehicle. They were not licensed drivers and would not have been permitted to drive the vehicle home.

Officer Ceci then conducted a sweep of the interior of the vehicle to check for weapons. He searched the front-seat passenger area, where Carson had left her purse. When he touched the bottom of the purse, Officer Ceci felt the outline of a handgun, which he retrieved and brought to his patrol vehicle. He then asked the other officers to place Carson and Sanders in custody, summoned a tow truck, and applied for a search warrant.

Defendant was charged with two weapons offenses, hindering apprehension, and four drug offenses, which were the subject of the outstanding warrant. Defendant moved to suppress the handgun found by Officer Ceci during his search of the car. The trial court denied the motion, finding that the traffic stop was properly based on the officer's articulable and reasonable suspicion that defendant had committed traffic offenses and that the search constituted a reasonable and lawful protective sweep. Pursuant to a plea agreement, defendant pled guilty to second-degree unlawful possession of a handgun and third-degree possession of a CDS.

Defendant appealed the trial court's denial of his motion to suppress. The majority of the Appellate Division panel concluded that Officer Ceci's search of the motor vehicle was not a lawful protective sweep and reversed the trial court's determination. 441 N.J. Super. 33, 46-47 (App. Div. 2015). The panel rejected the State's assertion that the community-caretaking exception governs this case and noted that the "plain-feel" doctrine was irrelevant. One member of the panel dissented, finding that the search was justified as both a valid protective sweep and an exercise of police community-caretaking functions. The State appealed as of right. R. 2:2-1(a)(2).

1

**HELD**: Although the circumstances gave rise to a reasonable suspicion that there was a weapon in the vehicle, the five officers' swift and coordinated action eliminated the risk that any of the four occupants would gain immediate access to the weapon. Accordingly, the protective sweep exception to the warrant requirement does not govern this case. The community-caretaking exception to the warrant requirement is irrelevant. However, the inevitable discovery exception to the exclusionary rule may be pertinent to this case.

1. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and set forth the requirements for warrants. Warrantless searches are permissible only if justified by one of the few specifically established and well-delineated exceptions to the warrant requirement. It is the State's burden to prove that a warrantless search falls within one or more of those exceptions. (pp. 16-17)

2. The protective sweep exception to the warrant requirement derives from Terry v. Ohio, 392 U.S. 1 (1968). In Terry, the Supreme Court held that a police officer may initiate an investigatory stop in the presence of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Terry stops are narrowly drawn to permit a reasonable search for weapons. (pp. 17-19)

3. The United States Supreme Court applied the protective sweep exception to an automobile setting in Michigan v. Long, 463 U.S. 1032, 1049 (1983). The Court adopted that standard in State v. Lund, 119 N.J. 35, 48 (1990), but rejected the State's claim that the search reviewed in that case was a valid protective sweep. In State v. Gamble, the Court upheld an automobile search as a lawful protective sweep. 218 N.J. 412, 431-33 (2014). (pp. 19-22)

4. Long and the Court's opinions in Lund and Gamble define the standard for a valid protective sweep of an automobile following a traffic stop: the State must present specific and articulable facts that, considered with the rational inferences from those facts, warrant a belief that an individual in the vehicle is dangerous and that he or she may gain immediate control of weapons. The protective sweep exception in the automobile setting does not turn solely on the potential presence of a weapon in a vehicle. Instead, it addresses the imminent danger to police when a driver or passenger will be permitted access to a vehicle that may contain a weapon or may be in a position to evade or overpower the officers at the scene. That standard governs this appeal. (p. 22)

5. In light of Officer Ceci's observations of defendant's driving, there were specific and articulable facts giving rise to reasonable suspicion that defendant had committed motor vehicle violations and that the traffic stop was therefore lawful. However, Officer Ceci's search of the car was not a valid protective sweep. There is no doubt that Officer Ceci's concerns that defendant and Henderson could be armed were justified, but Officer Ceci addressed the potential danger with prompt and effective action. None of the four occupants was given an opportunity to return to the car or was in a position to gain access to any weapon. The record did not reveal specific and articulable facts that, at the time of Officer Ceci's search of the vehicle, would reasonably warrant the conclusion that any of the vehicle's four occupants was potentially capable of gaining immediate control of weapons. The search of the car was not within the protective sweep exception to the warrant requirement. (pp. 23-25)

6. This case does not fit within the narrow parameters of the community-caretaking doctrine as applied to the search of a motor vehicle. There was no potential threat to any person's safety warranting application of the doctrine at the time that the search took place. The Court does not reach the "plain-feel" exception. (pp. 25-28)

7. In light of the officers' continued control over the vehicle, their reasonable concern that one or more occupants could have been armed, and the uncertain status of the vehicle's owner, it may have been inevitable that the handgun would have been discovered. Consequently, the inevitable discovery exception to the exclusionary rule is potentially relevant to this case. The Court explains that exception and provides guidance for evaluating its applicability on remand, but offers no view on the resolution of any issues raised on remand. (pp. 28-32)

The judgment of the Appellate Division is **MODIFIED** and **AFFIRMED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

      v.

DION E. ROBINSON (a/k/a
QUANTAE MASON ALBERT
MITCHELL),

    Defendant-Respondent.

Argued January 4, 2017 – Decided May 1, 2017

On appeal from the Superior Court, Appellate
Division, whose opinion is reported at 441
N.J. Super. 33 (App. Div. 2015).

Jane C. Schuster, Deputy Attorney General,
argued the cause for appellant (Christopher
S. Porrino, Attorney General of New Jersey,
attorney).

Lauren S. Michaels, Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney; Amira R. Scurato, Assistant Deputy
Public Defender, of counsel and on the
brief).

Jonathan Romberg argued the cause for amicus
curiae Seton Hall University School of Law
Center for Social Justice.

Rebecca J. Livengood argued the cause for
amicus curiae American Civil Liberties Union
of New Jersey (Edward L. Barocas, Legal
Director, attorney; Ms. Livengood, Mr.
Barocas, Alexander R. Shalom, and Jeanne M.
LoCicero, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

Under federal and New Jersey search-and-seizure jurisprudence, a police officer's warrantless search of the passenger compartment of a vehicle, following a lawful traffic stop, is a constitutional protective sweep when the circumstances give rise to a reasonable suspicion that a driver or passenger "is dangerous and may gain immediate access to weapons." State v. Gamble, 218 N.J. 412, 432 (2014) (citing Michigan v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201, 1220 (1983); State v. Lund, 119 N.J. 35, 48 (1990)). A protective sweep, permitted in order to "ferret out weapons that might be used against police officers," id. at 433 (quoting State v. Davila, 203 N.J. 97, 129 (2010)), "must be cursory and limited in scope to the location where the danger may be concealed," ibid.

In this appeal as of right, the Court considers whether the protective sweep exception to the warrant requirement applies to a police officer's search of a vehicle's passenger compartment in the wake of a traffic stop. The officer conducted a brief conversation with defendant, who was the driver, and his three passengers; the vehicle's occupants responded to the officer's questions with confusing and evasive answers. The officer then learned from his department's dispatcher and a law enforcement database that defendant and one passenger had outstanding

warrants and were known to carry weapons.  He requested backup and was promptly joined by four other officers.  The five officers removed the four occupants from the vehicle and frisked them for weapons.  They arrested and handcuffed defendant and one passenger and monitored the other passengers outside of the vehicle.  None of the four resisted the officers or sought access to the vehicle.  The police officer who had conducted the traffic stop then searched the interior of the vehicle.  The officer lifted one passenger's purse to search the seat, recognized that a weapon was contained in the purse, and retrieved a handgun.

Charged with the unlawful possession of a handgun, defendant moved to suppress the weapon on the ground that it was the product of an unconstitutional search.  The trial court denied the motion to suppress.  A divided Appellate Division panel reversed the trial court's judgment.  State v. Robinson, 441 N.J. Super. 33 (App. Div. 2015).  A majority of the panel held that the motor vehicle search did not constitute either a protective sweep or an exercise of the police officer's community-caretaking function.  The dissenting judge opined that the circumstances warranted a protective sweep of the vehicle for the officers' safety and that the community-caretaking exception to the warrant requirement also justified the search.

3

We conclude that although the circumstances gave rise to a reasonable suspicion that there was a weapon in the vehicle, the five officers' swift and coordinated action eliminated the risk that any of the four occupants would gain immediate access to the weapon.  Accordingly, we hold that the protective sweep exception to the warrant requirement does not govern this case.  We also concur with the Appellate Division majority's determination that the community-caretaking exception to the warrant requirement is irrelevant.  However, because the inevitable discovery exception to the exclusionary rule may be pertinent to this case, we conclude that a remand is necessary.

We therefore modify and affirm the Appellate Division's judgment.  We remand this matter to the trial court to determine whether to apply the inevitable discovery exception.

I.

We derive our summary of the facts from the record presented to the trial court during the suppression hearing. Officer Vincent Ceci of the Galloway Township Police Department was the sole witness at that hearing.

Shortly after midnight on April 5, 2012, Officer Ceci, driving a marked patrol car, observed a 2008 Mitsubishi Gallant leave the driveway of a motel and proceed westbound on Route 30. Officer Ceci knew the motel to be in an area associated with drug activity.

4

As the vehicle proceeded westbound, the driver activated his right turn signal and drove onto the shoulder of the road as if preparing to turn right toward a store, then returned to the travel lane.  Approaching an intersection, the driver again activated his right turn signal, but aborted his right turn and quickly crossed back into a westbound travel lane.  Officer Ceci considered the driving pattern a "little suspicious" and "unsafe."  He noticed the "silhouette" of an object hanging and swaying several inches below the rearview mirror.  He considered the object to be a potential impediment to the driver's view of the road.  The object was later identified as an air freshener.

After the car turned onto the northbound lanes of the Garden State Parkway, Officer Ceci conducted a motor vehicle stop.  He recalled that the lighting in the area was dim, and that his patrol car's mounted lights provided the only illumination of the scene.  Officer Ceci approached the car's passenger side.  He observed that there were four people in the car and that none of the four was wearing a seatbelt.  It would later be determined that the driver was defendant Dion E. Robinson, the front-seat passenger was Catilya Carson, the left-rear-seat passenger was Marcus Sanders, and the right-rear-seat passenger was Terron Henderson.

Officer Ceci asked defendant for his license, registration, and insurance.  Defendant misidentified himself as Henderson,

stated that his license was suspended, and provided the registration and insurance. Officer Ceci asked the passengers for identification. Henderson misidentified himself as defendant and stated that there was alcohol in the plastic cup that he was holding. Carson and Sanders accurately identified themselves and presented New Jersey identification cards but no driver's licenses.

Officer Ceci asked defendant where the group was going. Defendant responded that they were returning from Atlantic City and had been on the way to Sanders' home to drop him off when they were stopped. Sanders provided his address. In Officer Ceci's view, defendant's statement that he and his passengers were en route from Atlantic City to Sanders' residence was inconsistent with the location in which the officer initially spotted the car and with the direction in which the vehicle was traveling. Officer Ceci inquired as to who owned the car, and defendant said that it was owned by his friend, but that he did not know the friend's name. The passengers did not identify the vehicle's owner.

Ten minutes after commencement of the motor vehicle stop, Officer Ceci was advised by the Galloway Police Department's dispatcher that defendant "had an outstanding NCIC hit [--] warrant for a drug offense." The reference to an "NCIC hit" denoted the National Crime Information Center, "a computerized

6

database of criminal justice information available to law enforcement agencies nationwide." State v. Sloane, 193 N.J. 423, 433 (2008); see FBI, U.S. Dep't of Justice, Nat'l Crime Info. Ctr., https://fas.org/irp/agency/doj/fbi/is/ncic.htm. By accessing the NCIC database from his patrol car, Officer Ceci confirmed that defendant had an outstanding warrant and a suspended license.

The dispatcher communicated to Officer Ceci a caution that defendant was known to carry weapons. Officer Ceci did not ascertain the precise source from which the dispatcher obtained that information, but surmised that it derived from the New Jersey Judiciary's Automated Complaint System (ACS), which maintains "a history of all the warrant activity for a complaint." ACS-Automated Complaint Sys., N.J. Courts, http://www.judiciary.state.nj.us/ito/acs.html. The dispatcher also advised the officer that Henderson had an outstanding traffic warrant. The NCIC database included a "caution for weapons" regarding Henderson.

Informed that two of the four occupants of the vehicle had outstanding warrants and were known to carry weapons, Officer Ceci called for backup. Sergeant Baccardi and three other uniformed officers, each driving a patrol car, joined Officer Ceci at the scene.

7

Directed by Sergeant Baccardi, the officers decided to treat the situation as a "high-risk motor vehicle stop," utilizing procedures designed to minimize the risk of a violent incident. The officers directed defendant and Henderson out of the car, handcuffed them, and arrested them. A search incident to arrest revealed no weapons on either defendant or Henderson. Some of the officers were assigned to "essentially watch over" defendant and Henderson, who stood handcuffed on the side of the highway and were not permitted to return to the vehicle.

Next, the officers detained, but did not arrest, Carson and Sanders.[1] The officers patted them down and found no weapons. Carson and Sanders were then directed to stand on the side of the road, monitored by officers. Officer Ceci did not observe Carson or Sanders make any motion that suggested that either was reaching for a weapon, attempting to hide any object, or resisting the directions of the officers. Carson and Sanders were not allowed access to the vehicle. As Officer Ceci observed, they were not licensed drivers and would not have been permitted to drive the vehicle home.

Sergeant Baccardi then directed Officer Ceci to conduct a sweep of the interior of the vehicle to check for weapons.

---

[1] Officer Ceci testified that one of the other officers mistakenly handcuffed Carson but that Ceci informed the officer that Carson was not under arrest and the officer immediately removed the handcuffs.

After searching the driver's seat and adjacent areas, Officer Ceci searched the front-seat passenger area, where Carson had left her purse. Officer Ceci testified that he did not see a weapon when he initially noticed the purse. When he picked up the purse to check the area under it, however, Officer Ceci "could see and feel a very heavy object in there and . . . could almost see like, like a heavy object on the bottom." He stated that when he touched the bottom of the purse, he "definitely could feel the outline of a handgun." Officer Ceci immediately reached into the purse and retrieved a handgun. He brought it to his patrol vehicle and "made it safe." He then asked the other officers to place Carson and Sanders in custody because "we needed to figure out what was going on."

Officer Ceci then "attempted to get consent to search the car from [defendant]"; however, that effort evidently failed because the officers decided to seek a search warrant. With five officers on the scene and the four individuals secured, Officer Ceci concluded that it would be safe to summon a tow truck and impound the vehicle pending an application for a search warrant.[2] The vehicle was towed from the scene. The

_____

[2] Asked about steps that he would have taken had he not impounded the car, Officer Ceci said that he would have tried to contact the registered owner to determine whether any of the occupants were authorized to take custody of the car. He said that the occupants would not have any reason to return to the car except "to retrieve belongings, if they had any," and

9

officers later applied for a search warrant, which was granted. The officers searched the car pursuant to the warrant and found no weapons or other contraband.

## II.

Defendant was charged with second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7; and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4).[3]  He was also charged with four counts involving possession and distribution of a controlled dangerous substance (CDS), the offenses that were the subject of the warrant that was outstanding on the date of the traffic stop.

Defendant moved to suppress the handgun found by Officer Ceci during his search of the car.  He argued that the traffic stop was unconstitutional because he violated no laws and that, given the number of officers on the scene and the occupants' cooperation with those officers' directions, there was no reason

---

suggested that if he had not found a gun in Carson's purse, Carson would have been permitted to retrieve her purse.

[3]  Henderson and Carson were charged with second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) and fourth-degree obstructing administration of law, N.J.S.A. 2C:29-1(b).  Henderson was also charged with second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7.

10

to conduct a protective sweep.  The State contended that the officer's search of the vehicle was a valid protective sweep.[4]

The trial court denied defendant's motion to suppress. Finding the testimony of Officer Ceci to be consistent, credible, and reliable, the court concluded that the traffic stop was properly based on the officer's articulable and reasonable suspicion that defendant had committed traffic offenses.  The trial court held that the search constituted a reasonable and lawful protective sweep, which was warranted by officer safety concerns in light of the alerts that Officer Ceci received regarding the potential presence of weapons and his interactions with defendant and his passengers.  The court made no findings regarding any steps that the officers would have taken with respect to the vehicle or Carson's purse had Officer Ceci not located the handgun in the purse.

Pursuant to a plea agreement, defendant pled guilty to two offenses:  second-degree unlawful possession of a handgun and third-degree possession of a CDS.  He was sentenced to a five-year prison term with a three-year period of parole ineligibility on the handgun charge and a five-year prison term

---

[4]  The State did not contend that the search in this case was constitutional pursuant to the automobile exception to the warrant requirement under the then-prevailing standard of State v. Pena-Flores, 198 N.J. 6 (2009), overruled by State v. Witt, 223 N.J. 409 (2015) (applying prospectively).

11

with a two-and-a-half-year period of parole ineligibility for the CDS possession charge, to run concurrently with the sentence for the weapons charge.

Defendant appealed the trial court's denial of his motion to suppress. The majority of the Appellate Division panel concluded that Officer Ceci's search of the motor vehicle was not a lawful protective sweep and reversed the trial court's determination. Robinson, supra, 441 N.J. Super. at 46-47. The majority reasoned that even if the dispatch reports on prior use of weapons by defendant and Henderson gave rise to a reasonable suspicion that there was a weapon in the car, those reports would not justify the search as a protective sweep. Id. at 40. The panel noted that defendant and Henderson were arrested, handcuffed, and secured, and thus posed no threat that would warrant a sweep of the car. Id. at 42-43. The majority found no specific, articulable facts to support the conclusion that either Carson or Sanders was dangerous, or that either passenger was in a position to gain access to a weapon in the car. Id. at 42-45. The panel rejected the State's assertion that the community-caretaking exception to the warrant requirement governs this case and noted that, in the absence of an applicable exception to the warrant requirement, the "plain-feel" doctrine was irrelevant. Id. at 41 n.5, 46-47.

12

One member of the Appellate Division panel dissented from the panel's judgment, finding that the search was justified as both a valid protective sweep and an exercise of police community-caretaking functions. Id. at 51-54. The dissenting judge considered the search in this case to be warranted by factors such as the NCIC warning that defendant and Henderson might be armed and the group's presence late at night at "a motel in an area notorious for drugs." Id. at 50-51. The judge concluded that Carson and Sanders "posed a potential threat to the officers if permitted to return to the car to obtain their belongings" and noted that Officer Ceci indicated that they would have been allowed to retrieve their belongings had the car not been impounded. Id. at 51-52. The judge also found that the police officers' community-caretaking function independently justified the officers' search of the car. Id. at 53-54.

The State appealed the Appellate Division's decision as of right. R. 2:2-1(a)(2). We granted the motions of the American Civil Liberties Union – New Jersey (ACLU) and Seton Hall University School of Law Center for Social Justice to appear as amicus curiae.

III.

The State argues that under the totality of the circumstances presented in this case, the police officers had an objectively reasonable basis to search the vehicle for a weapon.

13

The State invokes the following factors to justify the search: the dispatcher's report of defendant's and Henderson's warrants and a caution for weapons; the evasive and inconsistent responses of the vehicle's occupants; the occupants' purported uncertainty about the name of the car's owner; the location of the car at a motel associated with drugs; the late hour; the absence of a valid driver's license; the presence of alcohol; and the failure of the occupants to use seatbelts. The State contends that the search constituted proper community-caretaking action by the officers. It argues that Officer Ceci lawfully determined the presence of the handgun pursuant to the "plain-feel" doctrine. The State asserts that the Court should adopt the reasoning of the dissenting judge and reverse the panel's judgment.

Defendant counters that nothing in the record indicates that defendant or his passengers were armed, noting that no witness reported seeing a person with a weapon or furtive movements in the car. He asserts that the State presented no evidence that would support a reasonable suspicion that Carson or Sanders, the only occupants of the car not arrested and handcuffed, had access to the handgun in Carson's purse. Defendant notes that the passengers were detained away from the vehicle and that the officers were in a position to ensure that no one would reach the handgun by locking the vehicle and taking

14

the keys.  Defendant urges the Court to affirm the Appellate Division's judgment.

Amicus curiae the ACLU concurs with defendant's contention that the record did not support a reasonable suspicion that Carson or Sanders presented a danger to the police.  The ACLU disputes the dissenting Appellate Division judge's conclusion that reasonable suspicion arises when a motor vehicle stop occurs in a high-crime location and at a late hour.  The ACLU asserts that, even if the outstanding warrants and evasive answers of defendant and Henderson were relevant to the inquiry, any indication that defendant and Henderson were dangerous cannot be imputed to Carson or Sanders.  The ACLU contends that the community-caretaking exception to the warrant requirement would apply only if the police officers intended to allow a member of the public to have access to the vehicle.

Amicus curiae the Center for Social Justice argues that the evidence did not substantiate the State's contention that the officers reasonably feared that Carson or Sanders could evade custody and retrieve the handgun from the vehicle, given the fact that the two passengers had been secured outside the car. The Center for Social Justice asserts that even if a search of the car was justified, any such search should have been limited to a cursory visual inspection, and that officers should have

15

been permitted only a pat-down of containers located in the vehicle.

IV.

A.

In our review of the trial court's decision denying the motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)).  However, "[w]e owe no deference to a trial or appellate court's interpretation of the law, and therefore our review of legal matters is de novo." State v. Hathaway, 222 N.J. 453, 467 (2015).

B.

1.

We review this appeal in accordance with familiar principles of constitutional law.  The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and set forth the requirements for warrants.

Warrantless searches are "permissible only if 'justified by one of the few specifically established and well-delineated

16

exceptions to the warrant requirement.'" State v. Witt, 223 N.J. 409, 422 (2015) (quoting State v. Frankel, 179 N.J. 586, 598, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004)). It is the State's burden to prove that a warrantless search falls within one or more of those exceptions. Gamble, supra, 218 N.J. at 425; State v. Bogan, 200 N.J. 61, 73 (2009); State v. Esteves, 93 N.J. 498, 503 (1983).

2.

The State primarily relies on the protective sweep exception to the warrant requirement. That exception derives from the holding of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In Terry, the Supreme Court held that a police officer may initiate an investigatory stop in the presence of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906. When an officer conducts such a stop, he or she may frisk the individual for weapons without probable cause for the protection of the police officer "where he has reason to believe that he is dealing with an armed and dangerous individual." Id. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909. "Terry stops" are "narrowly drawn . . . to permit a reasonable search for weapons." State v. Legette, 227 N.J. 460, 473 (2017) (omission in original)

17

(quoting Terry, supra, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909).

The Supreme Court applied the Terry doctrine to a search of a defendant's home during his arrest in Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094-95, 108 L. Ed. 2d 276, 281-82 (1990). In Buie, the Court authorized a "protective sweep" exception to the warrant requirement for a search conducted in conjunction with an arrest, carefully limiting the search to "spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334, 110 S. Ct. at 1098, 108 L. Ed. 2d at 286. The Supreme Court mandated that the protective sweep be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding" and that it last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 327, 335-36, 110 S. Ct. at 1094, 1099, 108 L. Ed. 2d at 281, 287.

This Court has recognized that the protective sweep authorized in Buie is "aligned with an evolution of familiar principles adhered to in this State, which provide law enforcement officers with critical safety tools to perform their oft-dangerous tasks." Davila, supra, 203 N.J. at 116. We have, however, limited the protective sweep of a home to settings in

18

which "(1) police officers are lawfully within private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger." Id. at 102. This Court has also imposed strict constraints on the duration and scope of the protective sweep in the residential setting. Ibid.; accord State v. Cope, 224 N.J. 530, 548 (2016).

The United States Supreme Court applied the protective sweep exception to the warrant requirement to an automobile setting in Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220. There, the Court authorized a circumscribed search of an automobile's passenger area to protect the safety of officers:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.
>
> [Ibid. (quoting Terry, supra, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906).]

In Lund, this Court adopted the constitutional standard articulated by the Supreme Court in Long and applied that standard in rejecting the State's claim that a police officer's

19

search of a vehicle was a valid protective sweep. Lund, supra, 119 N.J. at 48-50. The search reviewed in Lund occurred after an officer, while approaching a car during a traffic stop, observed the driver reach toward the back seat and then also observed a jacket stuffed into the back seat. Id. at 41. The officer asked for the driver's license and registration and observed that the driver appeared nervous. Ibid. The officer removed the occupants from the vehicle and patted them down, but found no weapons. Id. at 41-42. He then returned to the car, pulled the jacket from the back seat, and found a towel protruding from the seat. Id. at 42. Beneath the towel, the officer found a large envelope containing cocaine. Ibid. This Court held that those circumstances did not give rise to "a specific particularized basis for an objectively reasonable belief that the defendants were armed and dangerous." Id. at 48. Accordingly, the Court held that the cocaine located during the search should be suppressed. Ibid.

In the distinct factual setting of Gamble, supra, this Court upheld an automobile search as a lawful protective sweep. 218 N.J. at 431-33. There, two anonymous 9-1-1 calls to police -- the first reporting "shots fired" and the second stating that a man was sitting in a tan van with a gun in his lap -- prompted a police officer to conduct an investigatory stop of a vehicle matching the second caller's description. Id. at 418-19.

20

Weapons drawn, two officers approached the van; one officer observed the defendant driver and his passenger "moving frantically inside the vehicle, as if trying to hide something." Id. at 419 (internal quotation marks removed). When the lead officer ordered the occupants from the vehicle, the passenger complied, but the defendant aborted his exit from the vehicle and tried to return to the driver's seat. Id. at 419-20. The officer struck the defendant, pulled him from the van, frisked him for weapons, and transferred him to the custody of the backup officer. Id. at 420. The lead officer then returned to the van, searched it, and found a handgun and shell casings. Ibid.

The Court held that "[a]n officer lawfully stopping a vehicle may conduct a protective frisk of the passenger compartment if he has a reasonable suspicion that the individual is dangerous and may gain immediate access to weapons." Id. at 431-32 (citing Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220; Lund, supra, 119 N.J. at 48). Gamble reiterated a court's obligation to determine, in a fact-sensitive inquiry, "whether the totality of the circumstances provided the officer with an articulable and particularized suspicion that the individual was involved in criminal activity, within the context of the officer's relative experience and knowledge." Id. at 432. The Court noted that in light of the

defendant's conduct and the officers' failure to find a weapon on the person of either occupant, "[t]he risk to officers and public safety, which underpinned this Court's holding in Davila," was "equally present" in that case. Id. at 433. Concluding that the sweep was warranted by concerns of officer safety and appropriately constrained to the passenger compartment, the Court upheld its constitutionality. Ibid.

The Supreme Court's decision in Long and this Court's opinions in Lund and Gamble thus define the standard for a valid protective sweep of an automobile following a traffic stop: the State must present specific and articulable facts that, considered with the rational inferences from those facts, warrant a belief that an individual in the vehicle is dangerous and that he or she "may gain immediate control of weapons." Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220; see also Gamble, supra, 218 N.J. at 431-32. The protective sweep exception in the automobile setting does not turn solely on the potential presence of a weapon in a vehicle. Instead, it addresses the imminent danger to police when a driver or passenger will be permitted access to a vehicle that may contain a weapon or may be in a position to evade or overpower the officers at the scene. See Gamble, supra, 218 N.J. at 431-32; Lund, supra, 119 N.J. at 48. That standard governs this appeal.

22

As a threshold matter, the record contains sufficient credible evidence to support the trial court's finding that, in light of Officer Ceci's observations of defendant's driving, there were specific and articulable facts giving rise to reasonable suspicion that defendant had committed motor vehicle violations and that the traffic stop was therefore lawful.  See Gamble, supra, 218 N.J. at 431 (holding that circumstances created reasonable suspicion for investigatory stop); State v. Nishina, 175 N.J. 502, 512 (2003) (same).

We disagree, however, with the trial court's conclusion that Officer Ceci's search of the car was a valid protective sweep.  There is no doubt that Officer Ceci's concerns that defendant and Henderson could be armed were justified.  Prompted by the dispatcher, the officer properly relied on information provided by the NCIC database, which is used nationwide to protect police officers "who are at risk when they approach individuals during a traffic stop."  Sloane, supra, 193 N.J. at 434 (citing United States v. Finke, 85 F.3d 1275, 1280-81 (7th Cir. 1996) (recognizing that concerns for officer safety warrant criminal history check during traffic stop)).  The setting in which the stop took place -- late at night in an area known for crime -- and the evasive and contradictory comments of defendant and Henderson provided further support for a reasonable suspicion that a weapon was present.  Moreover, the fact that no

23

weapons were found when defendant and Henderson were frisked did not obviate the need for concern. See Gamble, supra, 218 N.J. at 432-33 ("The officers' reasonable concerns for their safety and the safety of others did not evaporate when they failed to find a weapon on either defendant or his passenger.").

Officer Ceci, however, addressed the potential danger with prompt and effective action. Because Officer Ceci summoned four backup officers, the officers outnumbered the occupants of the vehicle. The officers arrested, frisked, handcuffed, and took into custody the two individuals with outstanding warrants, defendant and Henderson. They directed Carson and Sanders, who were cooperative, to an area away from the vehicle and carefully monitored them. The officers thus assumed and maintained control of the vehicle and the scene. In light of that prudent police work, none of the four occupants was given an opportunity to return to the car. None was in a position to gain access to any weapon -- the handgun in the vehicle, or the officers' service weapons -- as might have happened had Officer Ceci attempted to conduct the traffic stop alone, or with a single partner. In short, the record did not reveal specific and articulable facts that, at the time of Officer Ceci's search of the vehicle, would reasonably warrant the conclusion that any of the vehicle's four occupants was potentially capable of gaining

24

"immediate control of weapons." Long, supra, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220.

Accordingly, we conclude that the search of the car was not within the protective sweep exception to the warrant requirement.

3.

The dissenting judge in the Appellate Division panel stated that the search of the vehicle was independently justified by a second exception to the warrant requirement: the community-caretaking doctrine. We briefly address that conclusion.

The community-caretaking doctrine originated in the United States Supreme Court's decision in Cady v. Dombrowski, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). There, the Supreme Court stated that local police officers frequently "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 441, 93 S. Ct. at 2528, 37 L. Ed. 2d at 715. The Supreme Court upheld the search of the trunk of an impounded car that revealed evidence of a police officer's involvement in a murder because the search was not conducted to investigate the murder but to secure the officer's service revolver after he was in an alcohol-related accident. Id. at 436-37, 93 S. Ct. at 2525-26, 37 L. Ed. 2d at

25

712.  The Court held that because of the potential risk to the public "if an intruder removed a revolver from the trunk of the vehicle," the search was a reasonable exercise of the police community-caretaking function.  Id. at 447, 93 S. Ct. at 2531, 37 L. Ed. 2d at 718.

The Supreme Court has also authorized, on community-caretaking grounds, a search of an impounded vehicle in accordance with routine procedures, without a specific indication that a weapon might be found.  South Dakota v. Opperman, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 3097, 49 L. Ed. 2d 1000, 1005 (1976).

In State v. Hill, this Court cited Cady and Opperman for the principle that the police community-caretaking role may justify the warrantless search of an impounded vehicle.  115 N.J. 169, 176-78 (1989).  The Court recently observed that its application of the community-caretaking doctrine in Hill was "only in the 'impounded automobile' context" and that "[u]nder our state law jurisprudence -- outside of the car-impoundment context -- warrantless searches justified in the name of the community-caretaking doctrine have involved some form of exigent or emergent circumstances."  State v. Vargas, 213 N.J. 301, 318, 326 (2013); see also Bogan, supra, 200 N.J. at 78-80 (upholding constitutionality of officer's entry into apartment when, after reports that child had been sexually assaulted in apartment,

26

officers heard adult male voice and observed another child in residence who stated he was home alone); State v. Diloreto, 180 N.J. 264, 271, 280-81 (2004) (noting that although community-caretaking doctrine "is not limitless," it justified search of individual, whose name matched that of "endangered" person on NCIC alert list, found asleep in car with engine running).

This case does not fit within the narrow parameters of the community-caretaking doctrine as applied to the search of a motor vehicle. When Officer Ceci conducted his search, no member of the public was imperiled by the presence of the handgun in the car. The officers had not contacted a tow operator to begin the process of impounding the car. They had not authorized the vehicle's owner or occupants -- or anyone else -- to drive it away from the scene. They maintained complete control of the vehicle. There was, in short, no potential threat to any person's safety warranting application of the community-caretaking doctrine at the time that the search took place.[5]

---

[5] Because Officer Ceci was not lawfully in the passenger compartment when he picked up the purse and noted the presence of the handgun, we do not reach the issue of whether the "plain-feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), applies to this case. See State v. Gonzales, 227 N.J. 77, 104 (2016) ("Plain view, in most instances, will not be the sole justification for a seizure of evidence because police must always have a lawful reason to be in the area where the evidence is found."); State v. Mann, 203 N.J. 328, 341 (2010) (finding plain view exception

We therefore concur with the Appellate Division majority that Officer Ceci's search was not justified under the community-caretaking exception to the warrant requirement.

C.

Our determination that this case is not within the protective sweep or community-caretaking exceptions to the warrant requirement does not end the analysis. In light of the officers' continued control over the vehicle, their reasonable concern that one or more occupants could have been armed, and the uncertain status of the vehicle's owner, it may have been inevitable that the handgun would have been discovered as officers engaged in constitutional law enforcement practices. Consequently, the inevitable discovery exception to the exclusionary rule is potentially relevant to this case.

The inevitable discovery exception derives from the principle that "the deterrent purposes of the exclusionary rule are not served by excluding evidence that, but for the misconduct, the police inevitably would have discovered." State v. Sugar, 100 N.J. 214, 237 (1985); see also Nix v. Williams, 467 U.S. 431, 442-44, 104 S. Ct. 2501, 2508-09, 81 L. Ed. 2d 377, 386-87 (1984) (recognizing inevitable discovery exception

appropriate when police officer lawfully approached vehicle to question occupants and then looked through window to see plastic bags suspected to contain drugs in plain view).

28

under Fourth Amendment).  In Sugar, supra, this Court acknowledged that "[b]ecause satisfaction by the State of the exception's requirements involves proof of hypothetical independent sources of obtaining the evidence, the exception's application is sometimes problematical."  100 N.J. at 237.

Because "[t]he State itself is directly responsible for the loss of the opportunity lawfully to obtain evidence," it must "make a strong showing that, by the admission of the evidence, it is in no better position than it would have enjoyed had no illegality occurred."  Id. at 239-40.  The Court, therefore, required the State to prove inevitable discovery by clear and convincing evidence, a higher standard than that imposed by federal law.  Compare id. at 240 ("The State must show by clear and convincing evidence that had the illegality not occurred, it would have pursued established investigatory procedures that would have inevitably resulted in the discovery of the controverted evidence, wholly apart from its unlawful acquisition."), with Nix, supra, 467 U.S. at 444, 104 S. Ct. at 2509, 81 L. Ed. 2d at 387-88 (imposing preponderance of evidence standard on prosecution).

The suppression hearing record is insufficient for this Court to determine whether the inevitable discovery exception applies.  That record, for example, does not reveal the steps that Officer Ceci and his colleagues would have taken had they

29

not found the gun and impounded the vehicle to seek a warrant. The trial court made no findings as to how the officers would have handled the vehicle, Carson's purse, and any items within it, had Officer Ceci not discovered the weapon.[6]

An expanded record, however, may support an application of the inevitable discovery exception in this case. By virtue of the NCIC notification for weapons and outstanding warrants, the officers were alerted to the potential presence of a weapon. Other than defendant's statement that the car was owned by a friend whom he could not name, the officers had no information about the relationship between the occupants and the vehicle's owner. The State may wish to argue that it would be justified in conducting a search prior to releasing the vehicle to the owner, or someone designated by the owner. See Cady, supra, 413 U.S. at 436-37, 93 S. Ct. at 2525-26, 37 L. Ed. 2d at 712 (upholding search of trunk of impounded car known to contain weapon); Hill, supra, 115 N.J. at 176-78 (finding that

---

[6] Officer Ceci's affirmative response to the question whether Carson "would have been free to retrieve her belongings, including her purse from the vehicle," does not clarify what would have occurred absent the search of the passenger compartment. The officer did not specify whether he would have taken the purse from the car in order to return it to Carson -- a measure consistent with the precautions that he and his fellow officers took to keep the occupants away from the vehicle -- or allowed her to reenter the vehicle herself to recover it.

community-caretaking role may justify search of impounded vehicle).

Alternatively, had the officers lawfully impounded the car, the circumstances might have justified an inventory search. See Opperman, supra, 428 U.S. at 369, 96 S. Ct. at 3097, 49 L. Ed. 2d at 1005 (identifying protection of inventoried property, protection of police and other bailees from false claims of property loss, and safeguarding of police from potential danger as objectives of inventory search); State v. Mangold, 82 N.J. 575, 577 (1980) (stating constitutional standard for inventory search after lawful impoundment); State v. Slockbower, 79 N.J. 1, 10-11 (1979) (same).

On remand, the trial court should afford the State an opportunity to meet its burden to prove by clear and convincing evidence that the weapon in Carson's purse inevitably would have been discovered by lawful means. See Sugar, supra, 100 N.J. at 239-40. If the State meets that burden, defendant's conviction should not be disturbed. If the State does not meet that burden, the trial court should enter judgment vacating defendant's conviction for unlawful possession of a weapon. See State v. Keaton, 222 N.J. 438, 451 (2015) (rejecting inevitable discovery exception in absence of evidence that police officers would have discovered contraband by lawful means); State v. K.W., 214 N.J. 499, 511 (2013) (finding inevitable discovery

31

exception inapplicable because of wiretap statute's exclusionary rule); State v. Worthy, 141 N.J. 368, 390-92 (1995) (same). We offer no view on the resolution of any issues raised on remand.

V.

The judgment of the Appellate Division is modified and affirmed, and the matter is remanded to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.