**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2983-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAMIK T. ROMERO,

     Defendant-Appellant.

_____

        Submitted December 16, 2020 –Decided March 4, 2021

        Before Judges Alvarez and Geiger.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-02-0096.

        Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, and Lisa Waters, Assistant Deputy Public Defender, of counsel and on the briefs).

        Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Shamik T. Romero appeals the denial of his motion to suppress evidence, after which he entered a guilty plea to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(d). The State agreed to a Graves Act waiver, and pursuant to a non-negotiated plea, defendant was sentenced to a term of four years' probation concurrent with his New York parole. We now reverse and remand.

At approximately 1:50 a.m. on September 13, 2016, City of Elizabeth Police Officer Edward J. Benenati, Jr., was on routine patrol with another officer, Joshua S. Kelly, when he noticed a broken left taillight on the car in front of him. Benenati and Kelly verified the Florida plates were legitimate as they followed the car while it made a right-hand turn into a darkened "dead end industrial area . . . ." The vehicle pulled over before the officers engaged the overhead lights. Benenati considered the location to be a high crime area. Both officers' body cameras were working, and the judge saw video clips from both devices.

When the officers approached, defendant had his door open and was looking in the front and back seat of the car. Defendant told the officers he had lost his license but had a temporary one. He searched through the vehicle,

A-2983-18

avoiding the center console, stepping out momentarily to check his pockets and then returning to continue searching.

Defendant also told the officers the vehicle belonged to his father, who was staying two blocks away. When his cell phone rang, Benenati ordered him not to answer and to put the phone down. Defendant told Benenati his father was calling and that he might have the registration on his phone. Benenati again ordered him to put the phone down.

Benenati, whom the judge found credible, said defendant was excited, talking a lot, moving a lot, and unable to sit still. Defendant touched a bag on the back seat of his car but did not open it. In the driver's side door pocket, Benenati saw a clear plastic bag tied with a knot that he thought might hold controlled dangerous substances. Benenati said he became apprehensive as a result of defendant's demeanor and behavior.

Kelly, called by defendant as his witness in the suppression hearing, testified that he did not believe that defendant posed a threat to the officers' safety. This contrasted with Benenati's conclusion that he was at risk.

Benenati asked defendant to step out of his car. Defendant attempted to bring his cell phone when doing so, but Benenati told him to leave it because he does not allow suspects to use their cell phones during motor vehicle stops.

 A-2983-18

Benenati directed defendant to place his hands on top of the car, patted him down for weapons, felt a bulge in defendant's pocket, reached into it, but found nothing. He placed defendant in the rear of the police vehicle, over defendant's objection that he could not be legally required to do so. Benenati responded that it was legal but did not handcuff him.

When asked, defendant gave his name, date of birth, and social security number. He stated he was staying with his father around the corner and gave the address, two blocks away from the stop. Defendant explained his father registered the car in Florida when he lived there. Benenati checked New York and New Jersey databases, but could not verify that defendant had a driver's license.

Benenati then conducted a search of the vehicle, stating he feared there was a weapon inside. Using a flashlight, he checked the driver's door pocket, only to find the plastic bag he previously saw was ripped open and empty. He then began to search the center console, glove compartment, and back seat. Not finding anything of interest, he returned to the police car.

Benenati confirmed that defendant's father's name matched the Florida registration. He checked that the VIN plate matched the Florida registration. After further questioning defendant, Benenati then returned to defendant's

4

vehicle to search the center console because defendant appeared to have avoided it during his search for documents. Having found nothing there, as he was backing out, he glimpsed a gun stuffed between the driver's seat and the center console. Benenati testified that the only reason he searched the vehicle was because he was concerned it held weapons.

The judge found the motor vehicle stop lawful because the broken taillight on defendant's vehicle violated N.J.S.A. 39:3-66. She concluded "that the officers lawfully stopped defendant's car because his rear lamp was not in 'good working order.'"

The judge also concluded that the officers' removal of defendant from the vehicle, direction to defendant to sit in the police car, and subsequent search of defendant's car, were justified. She opined that despite State v. Lark's[1] prohibition against an arrest for driving without a license, it would have been unreasonable for the officers to permit defendant to continue on his way after producing only the registration. The judge weighed the lateness of the hour, the empty plastic bag, the neighborhood, and defendant's behavior, to decide the officer had a reasonable and articulable suspicion that defendant was involved

---

[1] 163 N.J. 294, 296 (2000).

A-2983-18

in criminal activity. Therefore, the officer was entitled to search the vehicle and defendant's person.

The judge specifically found that although upon removing the knotted plastic bag, the officer was able to confirm that defendant was not in possession of any drugs, Benenati "still was not able to confirm defendant's identity or driver's license status" and therefore had a lawful basis for continuing to detain him. Given the officers' polite demeanor towards defendant, his approximately ten-minute detention "did not amount to a de facto arrest."

In the judge's view, despite State v. Lund, holding that a defendant's anxious demeanor does not alone give rise to a suspicion of criminal activity or a basis to search a vehicle, in this case, the early morning stop in a "desolate area" justified Benenati's belief that the car might contain weapons potentially dangerous to the officers. 119 N.J. 35 (1990). She analyzed Benenati's failure to find a weapon on defendant's person to merely "underscore[] the need to inspect the interior of the vehicle to make sure it did not contain a weapon before [defendant] . . . reentered [it]." State v. Gamble, 218 N.J. 412, 427 (2014). Therefore, the protective sweep of defendant's car was warranted, and the handgun should not be suppressed.

On appeal, defendant raises the following points:

A-2983-18

POINT I

THE POLICE DID NOT HAVE A VALID BASIS FOR THE MOTOR VEHICLE STOP.

POINT II

THE POLICE WERE NOT ALLOWED TO SEARCH THE CAR, LET ALONE REENTER AND CONDUCT A SECOND SEARCH UNDER THE PROTECTIVE SWEEP DOCTRINE.

    A.    THE PROTECTIVE SWEEP WAS ILLEGAL BECAUSE THERE WAS NO OBJECTIVE, REASONABLE BASIS TO BELIEVE THAT THERE WAS A WEAPON IN THE CAR, AND DEFENDANT DID NOT HAVE IMMEDIATE ACCESS TO THE CAR.

    B.    THE POLICE WERE NOT ALLOWED TO REENTER AND CONDUCT A SECOND SEARCH OF THE CAR UNDER THE PROTECTIVE SWEEP DOCTRINE.

We do not address defendant's challenge to the motor vehicle stop, as we consider it so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(2). We reach a different conclusion regarding the protective sweep of defendant's car.

An exception to the warrant requirement is a protective sweep of a vehicle, permitted when the totality of the circumstances gives rise to a suspicion that a driver or passenger "[is] dangerous and may gain immediate access to weapons."

7

A-2983-18

Gamble, 218 N.J. at 432 (citing Michigan v. Long, 463 U.S. 1032, 1049 (1983));

Lund, 119 N.J. at 48. The purpose of a protective sweep is to protect police

officers from weapons that might be used against them. Gamble, 218 N.J. at

433. The sweep "must be cursory and limited in scope to the location where the

danger may be concealed." State v. Robinson, 228 N.J. 529, 534 (2017).

When a warrantless search is challenged, "the State bears the burden of

establishing by a preponderance of the credible evidence that the search fits

within the scope of one of [the] exceptions." State v. Minitee, 210 N.J. 307, 318

(2012).

Here, defendant repeatedly insisted the car was registered and licensed to

his father, who had lived in Florida, and who lived nearby. The Florida plates

and registration were in good order. In fact, this bears strong resemblance to

the Lark situation, where a routine motor vehicle stop occurred. 163 N.J. at 296.

Ordinarily, there is no right to arrest for a motor vehicle offense. Ibid. An

otherwise proper motor vehicle stop should not be used as the gateway for

officers to ask drivers to step out, to search them, and upon finding nothing, to

direct them to be seated in a police car while a search of the interior of the

motorist's car is conducted. See ibid.

Defendant's removal from the car was improper, as was his detention in the patrol car. The search of his person and the two searches of his car were also improper. The seizure occurred because of Benenati's hunch—and that is not enough to salvage the search. See State v. Coles, 218 N.J. 322, 344 (2014).

Reasonable and articulable suspicion is defined as a level of suspicion that "is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989). The test is objective and must weigh the totality of the circumstances.

In Lund, the Florida-registered vehicle was occupied by the driver and two passengers. 119 N.J. at 41. Although the driver was unable to produce proof of registration, he did produce a Massachusetts driver's license. While the officer was speaking to him, the driver kept turning and looking into the back seat, so nervous that his "voice was cracking." Ibid. The pat-down search did not reveal a weapon. When the officer returned to defendant's vehicle and searched the back, he reached into the crevice of the seat, discovering an envelope containing a large quantity of cocaine. Id. at 42. Even in that scenario, the Court invalidated the search on the basis that mere nervousness and furtive gestures simply do not give rise to an articulable suspicion suggesting criminal activity. Id. at 47. A nervous reaction on the part of a driver is simply not

unusual, nor would it be in this case where defendant did not have a driver's license.  There was nothing inherent in the stop in <u>Lund</u> any more than in this case that should have given rise to a concern that the defendant was in possession of a weapon that would have posed a risk to the officers.

Similarly, in <u>Robinson</u>, officers stopped a car for a motor vehicle infraction after they observed it leaving a motel known for drug activity.  228 N.J. at 534-35.  When questioned, the driver and his passengers all gave confusing and evasive answers.  <u>Id.</u> at 534.  When the officer conducted a search of the law enforcement database available from the troop car, two of these individuals were flagged as known to carry weapons.  <u>Ibid.</u>  Thus, the officer's reasonable and articulable suspicion in that case arose not just from the reaction of the car's occupants, and the late hour, but the fact they were known to law enforcement as often carrying weapons, the high crime area, and confusing and evasive answers.  Nonetheless, the Court held that although the officers had a reasonable suspicion to believe a weapon was present, the protective sweep was invalid.  The officers' swift and coordinated actions eliminated the risk that anyone would gain immediate access to weapons.  <u>Id.</u> at 547.  The driver and passengers were detained.  The number of police officers outnumbered the occupants of the vehicle.  <u>Id.</u> at 549.

Here, defendant did not provide confusing or evasive answers. He told the officers that the car was owned by his father and was registered in Florida, a fact they confirmed. He told them that his father was two blocks away, a fact also confirmed by police databases. When Benenati frisked defendant, finding neither contraband nor weapons on his person, that should have put to rest any fear that a weapon that posed a risk of harm was in the vehicle. The generalities Benenati used to justify the protective sweep were insufficient to establish a reasonable, objective fear that defendant had a weapon.

But after the initial sweep that uncovered neither contraband nor weapons, the officer made a second search, also lacking in legal justification. The State's characterization of the second search as merely a continuation of the first because the officer had not finished is not supported by the record. In any event, each warrantless entry and sweep requires a separate legal justification. Arizona v. Hicks, 480 U.S. 321, 324-25 (1987); State v. Williams, 930 F.3d 44, 53 (2d Cir. 2019) (holding two consecutive automobile inventory searches are each separate, distinct, and each require legal justification).

It is well-established in New Jersey that law enforcement may conduct a Terry stop and lawfully detain an individual for a traffic violation only for so long as is necessary to investigate. State v. Dickey, 152 N.J. 468, 475-76 (1998).

11

Any questioning must be limited to matters directly related to the stop. State v. Baum, 393 N.J. Super. 275, 286 (App. Div. 2007) (citing Terry, 392 U.S. at 20) (holding that during an investigatory stop, the officer's conduct and search must be "reasonably related in scope to the circumstances which justified the interference in the first place."), aff'd as modified, 199 N.J. 407 (2009).

An officer can request that the driver produce their license, registration, and proof of insurance. Ibid.; accord Delaware v. Prouse, 440 U.S. 648, 659 (1979); see State v. Perlstein, 206 N.J. Super. 246, 253 (App. Div. 1985) (holding driver is required to produce driver's license, registration, and insurance ID card when requested to do so). Additionally, the officer can pose routine questions to a motorist about their whereabouts. Baum, 393 N.J. Super. at 286-87. See also United States v. Bloomfield, 40 F.3d 910, 915-16 (8th Cir. 1994) (officer requesting driver's license, rental agreement, and request for driver to accompany officer to police vehicle while officer radio checked the license was within the scope of a traffic stop). But during the stop, the officer must conduct the investigation in a manner intended to promptly complete the investigation of the traffic violation. Dickey, 152 N.J. at 477 (citing United States v. Sharpe, 470 U.S. 675, 686 (1985)).

A-2983-18

An investigative stop becomes a de facto arrest requiring probable cause "when 'the officers' conduct is more intrusive than necessary for an investigative stop.'" Dickey, 152 N.J. at 478. In this case, nothing came to the officer's attention which justified the extension of the search. The detention became a de facto arrest. See State v. Shaw, 237 N.J. 588, 612 (2019) ("There is no simple test for determining at which point a prolonged investigative stop turns into a de facto arrest, but important factors include unnecessary delays, handcuffing the suspect, confining the suspect in a police car, transporting the suspect, isolating the suspect, and the degree of fear and humiliation engendered by the police conduct.").

Once Benenati examined the empty plastic bag, assuming his look was lawful, he had no basis to continue the traffic stop. See Dickey, 152 N.J. at 179-80. Although Benenati may have had a basis to order defendant out of the vehicle, once an individual is detained, "a police officer must have a reasonable, articulable suspicion that the person [stopped] is involved in criminal or unlawful activity beyond that which initially justified the stop." State v. Bernokeits, 423 N.J. Super. 365, 371-72 (App. Div. 2011) (citing State v. Davis, 104 N.J. 490, 504 (1986)). After the pat down, Benenati led defendant to the back of the police vehicle, even though he had no objective reason to search.

Questioning him there, he then returned to conduct his first protective sweep. He looked inside the pocket of the driver's door, looked around the center console and under the glove compartment, searched the back seat and moved items around as he believed defendant was concealing something. Benenati checked the plastic bag he thought might have contained drugs, but it was ripped open. Based on these factors, it seems clear there was no continued reasonable suspicion justifying that second sweep.

The State argues that Benenati had the right to search the center console as a proper credential sweep. We do not reach that argument because it was not previously raised. See State v. Witt, 223 N.J. 409, 419 (2015) (holding "the points of divergence developed in proceedings before a trial court define the metes and bounds of appellate review" and "[f]or sound jurisprudential reasons, with few exceptions, our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available").

Furthermore, the argument ignores the obvious. There was simply "no particularized suspicion" that defendant was engaged in some criminal activity justifying his further detention. Shaw, 237 N.J. at 613. We reverse the trial judge's decision denying the suppression of the handgun and remand the matter

14

for further proceedings in accord with this decision.  The motion to suppress should have been granted.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2983-18