JUSTICE FERNANDEZ-VINA
delivered the opinion of the Court.
The issue on appeal is whether, during an investigatory stop, it is permissible for a police officer to follow suspects into their homes and seize evidence.
In response to a noise complaint, an officer arrived at Defendant James L. Legette’s apartment complex, where he observed defendant standing with another man in a public area. Because defendant began to walk away when the officer identified himself, the officer commenced an investigatory stop, asking defendant for identification. When defendant offered to retrieve identification from his apartment, the officer said he would have to accompany defendant. While in his apartment, defendant removed the sweatshirt he was wearing. The officer seized the sweatshirt and ultimately discovered a handgun in its pocket.
The trial court denied defendant’s motion to suppress the handgun, and the Appellate Division affirmed. The lower courts largely relied on Washington v. Chrisman, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), and State v. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 *464 L.Ed.2d 695 (1984), which concluded that it was reasonable for police officers to follow arrestees into their homes.
For the reasons set forth in this opinion, we decline to extend Chrisman and Bruzzese to detainees. Although warrantless entries into the home require probable cause, investigatory stops require the lower standard of reasonable suspicion. We therefore hold that, when conducting an investigatory stop, it is not permissible for an officer to follow suspects into their homes.
I.
On the night of January 17, 2012, Somers Point Police Officer Richard Dill (“Dill”) responded to a noise complaint in an apartment complex. Upon arrival, Dill noticed two men standing on a common porch. He parked and entered the building from another direction through a common hallway. Dill heard music and loud voices. As Dill neared the door to the common porch where he had seen the two men from the parking lot, defendant opened the door partway. Dill smelled the odor of burnt marijuana through the open door.
Dill walked onto the common porch and identified himself. Defendant walked away from Dill, heading toward the parking lot. Dill asked defendant where he was going, and defendant replied that he was going to his car. Dill inquired whether defendant had any identification. Defendant said that his identification was in his apartment and volunteered to retrieve it. Dill told defendant that he would have to accompany him to his apartment under the circumstances. Defendant did not respond and continued walking upstairs.
As defendant was walking, Dill noticed a bulge in the pocket of defendant’s sweatshirt. He followed defendant into the bedroom of the apartment, where defendant picked up his wallet, removed his identification, and handed it to Dill. Dill and defendant then went into the living room, where Dill radioed the information from defendant’s identification to dispatch.
*465 Defendant took off his sweatshirt, handed it to a woman who was also in the living room, and instructed her to put it in the bedroom, which she did. Dill interrupted his radio transmission and told defendant that he would need to examine the sweatshirt. Dill and defendant went to the bedroom, where defendant stepped over the sweatshirt he had been wearing and grabbed another one from the closet. Dill picked up the sweatshirt defendant had been wearing from the floor.
Dill and defendant returned to the living room, where Dill resumed his radio transmission regarding the existence of any outstanding warrants. Defendant became visibly nervous, so Dill asked defendant to step outside where Dill’s vehicle, his K-9, and a backup officer were located. Outside, Dill asked defendant to have a seat on the building steps. Defendant continued to appear anxious as Dill placed the sweatshirt on the ground. Dill informed defendant that he would be handcuffed and detained while Dill investigated.
The warrant inquiry revealed no outstanding warrants. Defendant did not consent to a search of the sweatshirt, so Dill placed defendant in the back of the patrol vehicle to wait while Dill conducted a K-9 search for drugs. Dill got another sweatshirt and a towel from his patrol vehicle and placed them on the ground next to defendant’s sweatshirt. The dog put his nose in defendant’s sweatshirt, grabbed it in its mouth, and dropped it onto the pavement. The sweatshirt made a clanking noise as it hit the ground. Dill picked up the sweatshirt and felt a handgun in the pocket, which he seized. The handgun was loaded.
A grand jury indicted defendant on second-degree unlawful possession of a handgun without a permit, contrary to N.J.S.A. 2C:39-5(b), and second-degree possession of a weapon by a convicted person, contrary to N.J.S.A. 2C:39-7.
Defendant filed a motion to suppress, challenging the validity of the search. The State argued that Dill had properly detained defendant due to a reasonable and articulable suspicion that a *466 crime had been committed, that entry into defendant’s home was lawful, and that the sweatshirt was in plain view.
After hearing testimony and considering additional briefing, the trial court denied defendant’s motion to suppress. Defendant ultimately pleaded guilty to possession of a weapon by a convicted person and was sentenced to a term of five years without parole.
Defendant appealed the suppression ruling. The State conceded on appeal that entering defendant’s residence and detaining defendant were more than reasonably necessary to investigate whether defendant was in possession of marijuana. The State asserted—for the first time on appeal—that the evidence should not be excluded under the theory of inevitable discovery because Dill would have located the handgun if he had used proper investigatory procedures.
The Appellate Division affirmed the trial court’s denial of the suppression motion. State v. Legette, 441 N.J.Super. 1, 11-12, 116 A.3d 32 (App. Div. 2015). The panel applied Chrisman and Bruz-zese, concluding that “an officer who has lawfully detained a suspect in an investigatory stop, like an officer who has lawfully arrested a subject, need not let the suspect out of his sight or presence during the detention.” Id. at 20, 116 A.3d 32. We granted defendant’s petition for certification. 223 N.J. 355, 124 A.3d 239 (2015).
II.
A.
Defendant argues that the reasonable suspicion necessary to justify an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is never sufficient to support warrantless entry into a home, which requires a showing of probable cause. Defendant stresses that Terry’s exception to the warrant requirement is narrowly tailored to allow an officer to search a suspect in a public setting. Accordingly, defendant argues that Terry stops must be limited in scope, brief in duration, and *467 aimed at proving or disproving an officer’s suspicion that crime is afoot. Finally, defendant asserts that the circumstances of this case present no exigencies supporting the exigent-circumstances exception to the warrant requirement.
B.
The State counters that permitting police officers to accompany a suspect who has been detained in a Terry stop is a logical extension of Chrisman and Bruzzese because the movements of a detained suspect pose as valid a safety concern as those of an arrestee. The State contends, moreover, that Dill had probable cause to arrest defendant based on the smell of marijuana and that the Court should therefore consider the search to be a search incident to arrest. Finally, the State asserts that defendant consented to the warrantless entry, as demonstrated by defendant’s silence when Dill stated that he would have to accompany defendant inside the apartment.[1]
III.
We review the scope of the holdings set forth in Chrisman and Bruzzese.
A.
In Chrisman, supra, a police officer stopped a college student who was carrying a bottle of gin and asked him for identification. 455 U.S. at 3, 102 S.Ct. at 815, 70 L.Ed.2d at 783. The student *468 “said that his identification was in his dormitory room and asked if the officer would wait while he went to retrieve it.” Ibid. The officer explained that under the circumstances, he would have to accompany the student, and the student replied, “OK.” Ibid. While standing in the doorway of the dormitory room, the officer noticed drugs and drug paraphernalia lying on a nearby desk. Id. at 4,102 S.Ct. at 815, 70 L.Ed.2d at 783. The student and his roommate subsequently consented to a search of the room, which yielded additional contraband. Ibid.
The Supreme Court concluded that it was valid for the officer to accompany the student to his room and upheld the seizure of drugs under the “plain view” exception to the Fourth Amendment. Id. at 5-8, 102 S.Ct. at 816-17, 70 L.Ed.2d at 784-86. The Court found that the officer had placed the student under lawful arrest; therefore, “[t]he officer had a right to remain literally at [the student’s] elbow at all times.” Id. at 6,102 S.Ct. at 816, 70 L.Ed.2d at 785.
The Court rejected the claim that exigent circumstances were required to justify the officer’s decision to follow the defendant into his room. Id. at 6, 102 S.Ct. at 816-17, 70 L.Ed.2d at 785. The Court reasoned that “[e]very arrest must be presumed to present a risk of danger to the arresting officer” because “[tjhere is no way for an officer to predict reliably how a particular subject will react to [the] arrest.” Id. at 7,102 S.Ct. at 817, 70 L.Ed.2d at 785. Accordingly, it was “not ‘unreasonable’ ... for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest.” Ibid.
B.
We subsequently adopted the Chrisman rule as the law of New Jersey. Bruzzese, supra, 94 N.J. at 234, 463 A.2d 320. In Bruzzese, police officers went to the defendant’s house to execute an outstanding arrest warrant for contempt, which was pending in municipal court. Id. at 214, 463 A.2d 320. The defendant came downstairs clad in a t-shirt and pants, but no shoes. Id. at 215, 463 *469 A 2d 320. When the officers stated that they intended to bring the defendant in for the outstanding warrant, the defendant stated “that he wanted to put on shoes and a jacket before going outside.” Ibid. The officers followed the defendant to his bedroom. Ibid. While in the bedroom, one of the officers noticed a pair of boots with a distinctive sole matching a boot imprint that had been left at the scene of an unsolved robbery. Ibid. The officer seized the boots. Ibid.
Based on the holding in Chrisman, this Court concluded that the officers in Bruzzese could “monitor the movements of an arrested person following the individual’s arrest.” Id. at 232, 463 A2d 320. In Bruzzese, this Court, like the United States Supreme Court, stressed that the police officer was permitted to follow the defendant into his bedroom because the defendant was under lawful arrest at the time. Ibid. In balancing the interests of public safety against the individual’s privacy interest, this Court reasoned that “the privacy rights of an individual who is placed under lawful arrest are diminished,” while “the arresting police officer is entitled to the protection he or she would receive under this rule.” Ibid.
This Court further noted that there are limitations on a police officer’s right to accompany an arrestee; however, we explained that police monitoring must be “objectively reasonable.” Id. at 234, 463 A2d 320. For example, this Court explained that police officers cannot lead an arrestee from place to place in an effort to use the arrestee’s presence as a pretext to search another area. Id. at 234-35, 463 A2d 320. Finding no such improper activity in Bruzzese, this Court concluded that following the defendant upstairs while he retrieved a jacket and shoes was reasonable. Id. at 235, 463 A 2d 320.
C.
The holdings in both Chrisman and Bruzzese were expressly contingent on the fact that the defendants in those cases had been placed under arrest prior to the officer’s entry into the residence. *470 The Supreme Court observed in Chrisman that “the officer had placed [defendant] under lawful arrest, and therefore was authorized to accompany him to his room for the purpose of obtaining identification.” Chrisman, supra, 455 U.S. at 6,102 S.Ct. at 816, 70 L.Ed.2d at 784 (emphasis added). Further, the Supreme Court explained that it is reasonable for an officer “to monitor the movements of an arrested person” due to a “compelling” need to ensure the officer’s safety and maintain “the integrity of the arrest.” Id. at 7, 102 S.Ct. at 817, 70 L.Ed.2& at 785 (emphasis added). In balancing the rights of the officer against those of the defendant, the Supreme Court concluded that such surveillance does not impinge upon the privacy rights “of an individual who has been arrested.” Ibid, (emphasis added).
Similarly, we stressed in Bruzzese that an arresting officer may remain at the suspect’s side “so long as the arrest is lawful.” Bruzzese, supra, 94 N.J. at 232, 468 A2d 320 (emphasis added). In reaching that conclusion, we balanced the interest in protecting the police officer against the “diminished” privacy rights of “an individual who is placed under lawful arrest.” Ibid, (emphasis added).
The dissent, contrary to Rule 1:36-3, relies on unpublished documents not part of this record to create a scenario as to what the outcome of the stop in Chrisman, supra, 455 U.S. at 1, 102 S.Ct. at 812, 70 L.Ed,.2d at 778, may have been. Based on conjecture, the dissent argues that the holding in Chrisman applies in situations when an individual is detained. The holding in Chrisman is clear and unambiguous. It applies only when an individual has been arrested. See id. at 6, 102 S.Ct. at 816, 70 L.Ed.2d at 784 (stating that officer had placed defendant “under lawful arrest, and therefore was authorized to accompany him to his room” (emphasis added)). To interpret Chrisman otherwise also defies our reasoning in Bruzzese, in which we unequivocally conditioned a police officer's right to “remain at [a defendant’s side]” upon placing the defendant under “lawful arrest.” Bruzzese, supra, 94 N.J. at 232, 463 A2d 320.
*471 The flaw in the dissent’s argument is further evidenced by its rebanee on the Appellate Division’s holding. See post at 481, 152 A.3d at 899-900. The Appellate Division did not find that Chris-man and Bruzzese applied to non-arrest cases. Rather, it reasoned that the holdings in those cases should be extended to pre-arrest detainees. See Legette, supra, 441 N.J.Super. at 19, 116 A.3d 32 (acknowledging that “the Supreme Court in Chrisman refers to the student as having already been placed under arrest” but concluding that “we do not think that this characterization makes Chrisman any less applicable to a pre-arrest situation” (quoting United States v. Roberts, 612 F.3d 306, 308, 310 n.4 (5th Cir.), cert. denied, 562 U.S. 1116, 131 S.Ct. 839, 178 L.Ed.2d 570 (2010)).
We conclude that Chrisman and Bruzzese apply only when a suspect has been arrested due to the diminished expectation of privacy of an individual under arrest. See Chrisman, supra, 455 U.S. at 7, 102 S.Ct. at 817, 70 L.Ed.2d at 785; Bruzzese, supra, 94 N.J. at 232, 463 A.2d 320. Because defendant in this case was not an arrestee but rather a detainee, Chrisman and Bruzzese are not directly on point. We must therefore determine whether the balance of interests supports Officer Dill’s actions here.
IV.
The question of whether Chrisman and Bruzzese should be extended to allow police to accompany detainees as well as arres-tees into their homes is a purely legal question. Accordingly, we conduct a de novo review. State v. Rockford, 213 N.J. 424, 440, 64 A.3d 514 (2013).
A.
The Federal and New Jersey State Constitutions guarantee the right to be free from unreasonable searches and seizures. U.S. Const, amend. IV; N.J. Const, art. 1, ¶ 7. In accord with those provisions, a lawful search must be prefaced by a warrant obtained upon probable cause “unless [the search] falls within one of the few well-dehneated exceptions to the warrant *472 requirement.” State v. Maryland, 167 N.J. 471, 482, 771 A.2d 1220 (2001) (alteration in original) (quoting State v. Citarella, 154 N.J. 272, 278, 712 A.2d 1096 (1998)). If no warrant was sought, the State bears the burden of demonstrating the validity of the search. State v. Pineiro, 181 N.J. 13, 19-20, 853 A.2d 887 (2004).
The State’s burden is particularly heavy when the search is conducted after warrantless entry into a home. We have generally “applied a more stringent standard of the Fourth Amendment to searches of a residential dwelling.” State v. Edmonds, 211 N.J. 117, 129, 47 A.3d 737 (2012) (quoting Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320). The home bears a “special status” because “unlawful, warrantless searches and seizures within the home are [the] ‘chief evil against which the wording of the Fourth Amendment is directed.’ ” State v. Johnson, 193 N.J. 528, 553-54, 940 A.2d 1185 (2008) (quoting Welsh v. Wisconsin, 477 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 742 (1984)).
Outside the home, courts have adjudged certain warrantless police encounters as permissible, including street-level investigatory stops, also known as Terry stops. Maryland, supra, 167 N.J. at 486, 771 A.2d 1220 (citing Terry, supra, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906). We must determine whether the public safety concerns underpinning investigatory stops can overcome the special status accorded to the home.
B.
An investigatory stop is constitutionally lawful “if it is based on ‘specific and articulable facts which, taken together with rational inferences from those facts,’ give rise to a reasonable suspicion of criminal activity.” State v. Rodriguez, 172 N.J. 117, 126, 796 A.2d 857 (2002) (quoting Terry, supra, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906). We have acknowledged that when a person is detained pursuant to an investigatory stop, “a person’s freedom of movement is restricted.” State v. Elders, 192 N.J. 224, 246, 927 A.2d 1250 (2007). Further, a detainee may be subjected to the “invasion of privacy that occurs in a pat-down of a *473 person’s body.” State v. Smith, 134 N.J. 599, 619, 637 A.2d 158 (1994). Nevertheless, because the “Reasonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest,” State v. Stovall, 170 N.J. 346, 356, 788 A.2d 746 (2002), there are certain limitations on the scope of such stops.
Terry stops are “narrowly drawn ... to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual.” Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Thus, we have established that “the investigative methods employed [in a Terry stop] should be the least intrusive means reasonably available to verify or dispel the officer’s suspicion in a short period of time.” State v. Privott, 203 N.J. 16, 31, 999 A.2d 415 (2010) (alteration in original) (quoting Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229, 238 (1983)).
Because officers are limited to taking self-protective measures during investigatory stops, we find that Chrisman and Bruzzese do not support warrantless entries into detainees’ homes. We therefore decline to expand the scope of investigatory stops to encompass police entry into the home. We conclude that Chrisman and Bruzzese apply only to cases in which a suspect has been arrested prior to the officer’s entry into the home. See Bruzzese, supra, 94 N.J. at 232, 463 A.2d 320.
V.
The facts of this case support our legal conclusion. The State argues that it was reasonable for Dill to accompany defendant into his apartment because defendant could have obtained a weapon in the apartment that could later have been used against the officer. The State also asserts that Dill had authority to monitor defendant to prevent flight.
*474 While we recognize that officer safety is a concern during any encounter with a suspect, it is less compelling under the facts here. By failing to conduct a routine investigatory pat-down before entering the apartment, which would have been proper under Terry, Dill belied the concern for safety. Accordingly, under the circumstances, Dill’s entry into defendant’s home did not promote public safety.
The State also contends that the smell of marijuana gave Dill probable cause to arrest defendant. Based on that probable cause, the State argues that it was reasonable for Dill to accompany defendant into his home as Dill would an arrestee.
It is irrelevant whether Dill had probable cause to effectuate an arrest; the inquiry under Chrisman and Bruzzese is whether defendant had been arrested when Dill followed defendant into his home. Here, it is not disputed that defendant had not been placed under arrest when Dill followed defendant into the apartment. The warrantless entry was thus improper, and the evidence seized as a result of that unlawful entry should be suppressed. State v. Gibson, 218 N.J. 277, 298, 95 A.3d 110 (2014).
The dissent cites two cases in support of the claim that Officer Dill’s conduct was appropriate because there was probable cause for an arrest: State v. Nishina, 175 N.J. 502, 816 A.2d 153 (2003), and State v. Vanderveer, 285 N.J.Super. 475, 667 A.2d 382 (App. Div. 1995). See post at 477-78, 152 A.3d at 897-98. Neither Nishina nor Vanderveer involved evidence seized after police entry of the defendants’ homes, however. Nishina, supra, 175 N.J. at 508, 816 A.2d 153, involved a search of a motor vehicle. And Vanderveer, supra, 285 N.J.Super. at 477, 667 A.2d 382, involved a search on an open porch. Those cases therefore do not justify Officer Dill’s conduct here.
The State asserts, finally, that there was consent for Dill to enter the apartment. The factual record before us does not support this conclusion. To establish that defendant waived his Fourth Amendment rights, the State must show that defendant *475 had “knowledge of the right to refuse consent.” State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975). Dill exerted his authority over defendant by stopping defendant from walking toward the parking lot. Subsequently, defendant did not respond when Dill indicated that he would have to accompany defendant into the apartment. Under these circumstances, the State has not shown that defendant thought he could refuse entry into his apartment. Therefore, we do not find that the search was consensual.
In sum, we find that the warrantless entry into defendant’s home was justified neither by the fact that defendant had been detained in the course of a Terry stop, nor by consent. Because the State has failed to meet its burden of demonstrating that the warrantless entry fell within a recognized exception to the warrant requirement, we hold that the entry was illegal and that the evidence obtained as a result of that entry should have been suppressed.
VI.
For the reasons set forth above, the judgment of the Appellate Division is reversed and the case is remanded for a new trial.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and TIMPONE join in JUSTICE FERNANDEZ-VINA’s opinion. Justice SOLOMON filed a separate, dissenting opinion.

 The State also argues that discovery of the handgun, was inevitable, because it would have been found pursuant to a search incident to arrest for possession of marijuana. Because the State raised this argument for the first time on appeal, we decline to consider it. State v. Robinson, 200 N.J. 1, 20, 974 A.2d 1057 (2009) (“[I]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973))).