**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0601-17T3

JAMES D. RALPH, III,
and DIANE G. RALPH,

     Plaintiffs-Appellants,

v.

THE BOROUGH OF SEASIDE PARK,

     Defendant-Respondent,

and

COUNTY OF OCEAN, STATE OF NEW
JERSEY and STATE OF NEW JERSEY,

     Defendants.

_____

     Argued December 11, 2018 – Decided January 22, 2019

     Before Judges Yannotti and Rothstadt.

     On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000269-15.

Edward F. Liston, Jr., argued the cause for appellants (Edward F. Liston, Jr., LLC, attorneys; Jeff Thakker, of counsel; Edward F. Liston, Jr., of counsel and on the briefs).

Paul H. Schneider argued the cause for respondent (Giordano, Halleran & Ciesla, PC, attorneys; Paul H. Schneider and Geoffrey E. Lynott, on the brief).

PER CURIAM

Plaintiffs James D. Ralph, III and Diane G. Ralph appeal from a final judgment entered by the Chancery Division on August 31, 2017, which declared that plaintiffs do not hold title to any portion of a ten-foot-wide strip of tide-flowed riparian land in Barnegat Bay, which is identified as Block 52, Lot 47 on the tax map of the Borough of Seaside Park. We affirm.

I.

We briefly summarize the pertinent facts. Plaintiffs are the owners of property on K Court, which is identified as Block 52, Lot 45 on the Borough's tax map. Plaintiff's property is part of a forty-five-lot subdivision known as "Berkeley Quay," which developer Berkeley Point, Inc. created in 1966. Berkeley Quay is located on a peninsula of filled, formerly tide-flowed land, which extends west into Barnegat Bay from a barrier island.

Adjacent to Berkeley Quay is a ten-foot-wide parcel of riparian land that is situated between the development's wooden bulkhead and the State's Pierhead

and Bulkhead Line (the Pierhead Line). The riparian land is identified as Block 52, Lot 47 on the Borough's tax map. In January 1990, Charles T. Kline, Jr., and John L. Ricketts, the sole surviving shareholders of Berkeley Point, transferred title to Block 52, Lot 47 to the Borough. Sometime before the conveyance, Berkeley Point had been dissolved and was in the process of winding up.

In December 2002, plaintiffs acquired Lot 45, and in 2007, they filed an application with the New Jersey Department of Environmental Protection for a waterfront development permit to construct a dock that would extend from the bulkhead through Lot 47 and continue about sixty feet into Barnegat Bay. The Borough objected to construction of the dock on its property.

Plaintiffs then filed this quiet title action, asserting ownership of the portion of Lot 47 adjacent to Lot 45. Plaintiffs claimed that a predecessor-in-title acquired the property in a 1968 deed from Berkeley Point. Plaintiffs alleged the property was eventually conveyed to them through the other deeds in their chain of title. The Borough disputed plaintiffs' claim.

Judge Francis R. Hodgson, Jr. conducted a trial in the matter, sitting without a jury. At the trial, evidence was presented showing that prior to the late 1960's, plaintiffs' property and other lots in Berkeley Quay were situated

A-0601-17T3

below the mean high water line of Barnegat Bay.  In 1959 and in 1966, the State transferred title to certain tidelands to Dorothy Thomas and to Berkeley Point, respectively.  Later, members of the Thomas family conveyed a portion of their tide-flowed property to Berkeley Point.

Thereafter, Berkeley Point filled the tidelands up to a timber bulkhead it had constructed, which was ten feet shy of the Pierhead Line.  Berkeley Point then subdivided the property and created Berkeley Quay.  On April 15, 1966, Berkeley Point filed a subdivision map with the Ocean County Clerk titled "Plan of Berkeley Quay" (the Original Subdivision Map).  Twenty-five of the lots in Berkeley Quay border upon Barnegat Bay.  The map depicts the bulkhead with a solid line and the Pierhead Line with a dashed line.

On April 29, 1968, Berkeley Point filed an amended subdivision map with the Ocean County Clerk titled "Amended Map of Part of Block 52 – Berkeley Quay" (the Amended Subdivision Map).  Lots 44, 45 and 46 were converted into two lots, and the dimensions of Lot 41 were corrected.  However, the amended map also depicts the bulkhead with a solid line and the Pierhead Line with a dashed line.

The Borough's earliest tax map presented at trial is dated March 5, 1968.  The map has solid lines indicating both the bulkhead and the Pierhead Line.  A

4

later tax map, which dates from about 1977, shows the tide-flowed ten-foot-wide strip of land as a separate lot, which is identified as Block 52, Lot 47. The Borough's subsequent tax maps also depict Lot 47 as a separate lot.

The Kline/Ricketts deed to the Borough for Lot 47 does not include a metes and bounds description. Instead, the deed describes the land conveyed solely by reference to the block and lot number on the Borough's tax map. The deed also states, "[There] is hereby excepted from the above conveyance the wooden bulkhead running along the adjoining upland area of Block 52, Lot 47." In addition, the deed prohibits the construction of docks, pilings or other structures upon the lot.

In general, the deeds that Berkeley Point issued for lots in Berkeley Quay convey title solely by reference to the block and lot numbers on the Berkeley Quay subdivision maps, with no metes and bounds descriptions and no references to the block and lot numbers on the Borough's tax map. Furthermore, each deed out of Berkeley Point contains certain restrictions, including a restriction, in effect through January 1, 1975, that precludes the construction of any dock, pier, or other structure without Berkeley Point's approval.

Berkeley Point initially conveyed what would become plaintiffs' property to Anton and Irene Smutko by a deed recorded on July 18, 1968. The Smutko

A-0601-17T3

Deed does not contain a metes and bounds description. The property is described as Block 52, Lot 45 on the Berkeley Quay subdivision maps. The Smutko Deed does not mention any riparian lands, tidelands, submerged lands, subaqueous lands, or the Pierhead Line.

On August 4, 1982, the Smutkos conveyed the property to Paul and Vivian Gangi. The Gangi Deed describes the property as "the same premises conveyed to [the Smutkos] by deed of Berkeley Point." The Gangi Deed does not have a metes and bounds description. The property is described by reference to the block and lot numbers on the Berkeley Quay subdivision maps, specifically Block 52, Lot 45. The deed also does not mention any riparian lands, tidelands, submerged lands, subaqueous lands, or the Pierhead Line.

On December 16, 2002, the Gangis conveyed the property to plaintiffs. The deed describes the property as "the same premises" that the Smutkos conveyed to the Gangis. Plaintiffs' deed is the only deed in their chain of title that includes a metes and bounds description. The property is described as a lot which is 66.66 feet wide, with a lot depth extending 100 feet from K Court. It is undisputed that the metes and bounds description in plaintiffs' deed only includes property that extends to the wooden bulkhead. The description does not include any part of the tide-flowed land identified as Block 52, Lot 47 on

6

A-0601-17T3

the Borough's tax map.[1]  Plaintiffs' deed also does not mention riparian lands, tidelands, submerged lands, subaqueous land, or the Pierhead Line.

In addition, the record shows that the property taxes for Block 52, Lot 45 have at all relevant times been assessed on a lot that is 66.66 feet by 100 feet. The tax assessments do not include any part of the tide-flowed property identified as Block 52, Lot 47 on the tax map.

At trial, Richard O. Venino testified as plaintiffs' title expert.  Venino opined that each numbered waterfront lot on the Berkeley Quay subdivision maps include the adjacent portion of the ten-foot-wide strip of tide-flowed land. He stated that the initial conveyances out of Berkeley Point were made by reference to the numbered lots on the Berkeley Quay subdivision maps, and the initial conveyance of Lot 45 to the Smutkos included the land extending out to the Pierhead Line.

Venino noted that generally solid lines on subdivision maps depict the boundaries of the property, and the Berkeley Quay subdivision maps use a solid line to depict the bulkhead and a dashed line to depict the Pierhead Line.  He

---

[1]  Plaintiffs' deed also describes the property as Block 52, Lot 46 on Berkeley Quay's Amended Subdivision Map.  It is undisputed that Block 52, Lot 46 as shown on the subdivision map corresponds to Block 52, Lot 45 on the Borough's current tax map.

A-0601-17T3

opined, however, that the outermost boundaries of the waterfront lots in Berkeley Quay is the Pierhead Line, not the bulkhead, because the sidelines of the waterfront lots shown on both subdivision maps are solid lines and those lines extend out to the Pierhead Line.

Venino acknowledged that the metes and bounds description in plaintiffs' deed defines a lot that extends only to the bulkhead. He opined that the description is erroneous. He also stated that because the initial deeds for the waterfront lots in Berkeley Quay included the adjacent portions of the ten-foot-wide riparian land, Berkeley Point no longer had title to any part of the ten-foot strip after the initial conveyances, and could not convey the land to the Borough in 1990.

Venino further testified that even if Berkeley Point owned the ten-foot-wide strip in 1990, the Borough's deed was invalid because Kline and Ricketts conveyed the property as the sole surviving stockholders of Berkeley Point, rather than in the name of and on behalf of the corporation. He also stated that the Kline/Ricketts deed was ineffective because the conveyance was made solely by reference to the block and lot designations on the Borough's tax map.

Joseph Grabas testified as the Borough's title expert. He stated that the boundaries of the waterfront lots as shown on the Berkeley Quay subdivision

8

maps extend only to the bulkhead and do not include any part of the adjacent tide-flowed land. Grabas noted that on the subdivision maps, the bulkhead is represented by a solid line, whereas the Pierhead Line is shown with a dashed line. He explained that solid lines typically indicate property boundaries and dashed lines indicate other interests.

Grabas testified that on the Berkeley Quay subdivision maps, solid lines were used to depict the sidelines for the waterfront lots, and they extend to the Pierhead Line. He opined, however, that the outer boundaries of the waterfront lots are at the points where the solid sidelines first intersect another solid line which is at the bulkhead, not the Pierhead Line. Grabas also testified that the linear dimensions, courses, and notes on the Berkeley Quay subdivision maps support the conclusion that the boundaries of the waterfront lots on Barnegat Bay only extend to the bulkhead.

The Borough also presented expert testimony from Barry S. Jones, who has been a New Jersey licensed land surveyor for more than thirty-five years. Jones testified that a surveyor preparing a metes and bounds description of plaintiffs' property by reference to information on the Berkeley Quay subdivision maps would conclude that the property extends 100 feet from K Court to the bulkhead line and does not include any part of the adjacent ten-foot-

A-0601-17T3

wide strip of tide-flowed land identified as Block 52, Lot 47 on the Borough's tax maps.

Jones further testified that both subdivision maps do not designate the ten-foot-wide strip of riparian land as a separate lot. He stated that if he were going to survey plaintiffs' property, he would not include any part of the adjacent ten-foot-wide strip of tide-flowed land.

Judge Hodgson thereafter filed a written opinion finding that plaintiffs' property ends at the bulkhead on Barnegat Bay, not the Pierhead Line, and the Borough owns the ten-foot-wide tide-flowed strip of land identified on the Borough's tax map as Block 52, Lot 47. The judge rejected Venino's opinion that the ten-foot-wide strip of riparian land is part of plaintiffs' property. The judge found the opinions of the Borough's experts were supported by the evidence, and were more persuasive than the contrary opinions of plaintiffs' expert.

The judge also rejected plaintiffs' contention that the Borough's deed was invalid because it was conveyed by Kline and Ricketts as the sole surviving shareholders of Berkeley Point, rather than in the name of and on behalf of Berkeley Point, the corporate entity. The judge found that Kline and Ricketts's action in conveying the property was voidable, not void. The judge noted that

no shareholder of Berkeley Point had ever sought to invalidate the conveyance. Therefore, the judge found that the deed validly conveyed title to Block 52, Lot 47 to the Borough.

The judge entered a final judgment declaring that the Borough has title to the ten-foot-wide strip of tide-flowed land identified as Block 52, Lot 47 on the Borough's tax map. This appeal followed.

## II.

On appeal, plaintiffs first argue that in 1968, Berkeley Point conveyed title to the ten-foot strip of tide-flowed land adjacent to their lot to the Smutkos. Plaintiffs therefore argue that Berkeley Point did not own the land in 1990 when Kline and Ricketts purported to convey the property to the Borough. We disagree.

Appellate review of a trial court's findings of fact is limited. Cesare v. Cesare, 154 N.J. 394, 411–12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). An appellate court should not disturb the trial judge's findings of fact in a non-jury case unless "they are so wholly insupportable as to result in a denial of justice." Rova Farms, 65 N.J. at 483–84 (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)). "The general rule is that findings by the trial court are binding on appeal when

11

supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms, 65 N.J. at 484).

Here, there is sufficient credible evidence in the record to support Judge Hodgson's finding that the Borough has legal title to the strip of tide-flowed land designated as Block 52, Lot 47 on the Borough's tax map. In reaching that conclusion, the judge considered the Berkeley Quay subdivision maps, the deeds in plaintiffs' chain of title, the Borough's tax maps, other records, as well as the testimony presented at trial by the parties' expert witnesses.

As the judge stated in his opinion, there is no evidence that Berkeley Point intended to convey the tide-flowed strip to the Smutkos, or that the Smutkos, Gangis, or plaintiffs thereafter believed they were the owners of that land. The judge noted that there is no reference to the tide-flowed land in any of the deeds in the plaintiffs' chain of title, and the deeds do not mention riparian lands, tidelands, submerged lands, subaqueous lands, or the Pierhead Line.

The judge pointed out that the Smutkos' deed describes the property transferred to them by reference to the block and lot designation on the Berkeley Quay subdivision maps. The judge noted that on the subdivision maps, the bulkhead is a solid line and the Pierhead line is a broken line. Grabas testified

12

that generally, solid lines are used to depict the boundary lines, and broken lines are used to show other interests.

The judge observed that on the subdivision maps, the sidelines of the waterfront lots are solid and extend to the Pierhead Line; however, the judge was persuaded by Grabas's testimony that the fact that the sidelines were solid was not dispositive. The judge concluded that the boundary ends where the solid line first intersects with a solid line, which is at the bulkhead. The judge found that the evidence showed that Berkeley Point had intentionally excluded the tide-flowed adjacent land from its conveyance to the Smutkos.

The judge also observed that plaintiffs' deed contains a metes and bounds description. That description ends at the bulkhead and does not include any part of the tide-flowed land. As the judge found, the deed shows that plaintiffs understood they were taking title to the property therein described, which does not include the adjacent tide-flowed land. In addition, the record shows that the property taxes on plaintiffs' property have at all times been assessed on a lot of 66.66 feet in width by 100 feet in depth. Property taxes for Lot 45 were not assessed on any part of the disputed ten-foot-wide strip of tide-flowed land.

Furthermore, at trial, Venino and Grabas both testified that tax maps and records are not dispositive, but can provide useful information in identifying

13

boundaries and ownership. Grabas noted, however, that the Borough's tax maps have consistently depicted the waterfront lots in Berkeley Quay as extending out to the bulkhead, not the Pierhead Line. Moreover, Venino acknowledged that the Gangis' and plaintiffs' deeds include tax lot references; but, the tax lots do not include the adjacent parts of the ten-foot-wide strip of tide-flowed land, thereby supporting the conclusion that the boundary ends at the bulkhead.

Finally, the judge observed that a provision in the initial deeds out of Berkeley Point precludes the construction of any dock, pier, or other structure, without Berkeley Point's approval. The judge stated that, "[t]his restriction served to put the parties on notice that they would not have full use of their water rights and that the riparian strip was not conveyed to them."

The judge also found that other evidence established that the Smutkos did not believe they had title to the adjacent subaqueous land. There was no reference to this land in the Smutkos' conveyance to the Gangis. In addition, the Smutko Deed refers to the property by reference to the tax lot designation. The judge found this significant because the tax map in effect at the time of the Smutko conveyance identified the disputed tide-flowed land as Block 52, Lot 47. The judge found that this shows the Smutkos and Gangis did not believe "they either had or could pass title to the riparian strip[.]"

14

We are convinced there is sufficient credible evidence in the record to support Judge Hodgson's thorough and detailed findings of fact. The record supports the judge's conclusion that plaintiffs' property does not include any part of the adjacent ten-foot-wide strip of tide-flowed land in Barnegat Bay.

III.

Next, plaintiffs argue that the deed executed by Kline and Ricketts was invalid and did not convey Block 52, Lot 47 to the Borough. Plaintiffs argue that the Borough's deed is a nullity because Kline and Ricketts conveyed the deed "as the sole surviving stockholders" of Berkeley Point, rather than on behalf of and in the name of the corporation. Again, we disagree.

Generally, a dissolved corporation may not continue to carry on business, although it may take limited action to wind up its affairs. Landa v. Adams, 162 N.J. Super. 318, 321 (App. Div. 1978); N.J.S.A. 14A:12-9(1). The dissolved entity may, however, "pay, satisfy or discharge its debts and other liabilities." Landa, 162 N.J. Super. at 321 (citing N.J.S.A. 14A:12-9(1)). Furthermore, "[a]ny assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests" and "[d]istribution may be made in either or both cash and kind." N.J.S.A. 14A:12-16.

A-0601-17T3

Here, the record shows that at the time of the conveyance in 1990, Berkeley Point was essentially defunct. The Borough's deed states that Berkeley Point had been dissolved on September 24, 1982 "when a plan of liquidation under Section 337 of the Internal Revenue Code was effectuated with a final distribution" occurring in either January 1983 or 1988. Furthermore, the State's records indicate that Berkeley Point filed its last annual report in 1986, its charter was declared "inactive/revoked" in 1988, and a receiver had not been appointed for the corporation.

The judge stated that the evidence established that Kline and Ricketts were the sole surviving shareholders of Berkeley Point. They also were members of the corporation. The judge found that Berkeley Point could have ratified the conveyance of the property to the Borough, and Kline and Ricketts "had the authority" to ratify their own actions on behalf of the corporation. The judge determined that any disregard for corporate formalities would not render the Borough's deed void, but merely voidable.

"The concept of ratification is well understood and has frequently been applied in situations where an entity has the legal power to perform an act, so long as it follows the required formalities." Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urban Renewal Co., LLC, 435 N.J. Super. 51, 65

16

(App. Div. 2014). "Ultra vires" acts are acts that are "void and may not be ratified," while "intra vires" acts are acts that are merely "voidable for want of authority." Ibid. (quoting Grimes v. City of East Orange, 288 N.J. Super. 275, 279–80 (App. Div. 1996)).

In this case, there is sufficient credible evidence in the record to support the judge's finding that the Kline/Ricketts conveyance of Block 52, Lot 47 was effective and transferred title to the Borough. As the judge found, Kline and Ricketts acted as the sole surviving shareholders of Berkeley Point when they executed the deed. They also conveyed title to the property to the Borough as part of the process of winding up the affairs of a corporation, which had been dissolved and was essentially defunct.

The record supports the judge's finding that Kline and Ricketts's conveyance of the property to the Borough was "intra vires," and therefore voidable, but not "ultra vires" and void per se. Because Berkeley Point's other shareholders never took action to set aside the deed, the judge correctly found that the deed was valid and the Borough had title to the property.

IV.

Plaintiffs also contend that the Kline/Ricketts deed is of no force and effect because it is allegedly inconsistent with the State's original riparian grant.

17

Plaintiffs contend the Borough's objection to their construction of a dock is inconsistent with the State's public trust doctrine. Plaintiffs assert if this court declares the Borough the owner of the disputed tide-flowed land, the Borough's ownership should be subject to plaintiffs' right, and the right of the owners of the other similar lots in Berkeley Quay, to build docks or piers extending over the property.

Plaintiffs did not, however, raise these arguments in the trial court. Ordinarily, we will not consider issues not raised below. State v. Legette, 227 N.J. 460, 467 n.1 (2017); Zaman v. Felton, 219 N.J. 199, 226-27 (2014). We have elected, however, to address the arguments in order to finally resolve this dispute.

In support of their argument that the deed violates the State's riparian grants, plaintiffs rely upon the following provision, which appears in the grants to Dorothy Thomas and to Berkeley Point:

> This grant of riparian lands, until such time as the tidewaters shall be excluded therefrom by filling or other development of the same as herein permitted, is made subject to the natural rights of the public to the use of the waters flowing over the same and to temporarily anchor thereon. This reservation shall cease as to any lands thus improved and shall not be construed to include the right in the public to approach, venture upon, or to make use of any such improvement.

A-0601-17T3

There is, however, no evidence that the Borough ever has interfered with plaintiffs' right, or the right of any member of the public, to use the waters flowing over the disputed land. Notwithstanding plaintiffs' argument to the contrary, any right to use the waters does not include the right to construct piers and docks on the tide-flowed land. Plaintiffs' argument is without sufficient merit to warrant further comment. R. 2:11-3(e)(1)(E).

Plaintiffs also argue that if the Borough has title to the tide-flowed land, it does not have the right to restrict the Berkeley Quay property owners from building docks and piers extending from their property into Lot 47. Plaintiffs contend the final judgment in this case gives the Borough absolute ownership and control of the disputed land and therefore inequitably "obliterates" their right to construct such a dock, pier, or similar structure. Plaintiffs' contention is meritless.

As noted previously, the 1968 deed out of Berkeley Point gave the Smutkos the right to construct a dock, pier, or similar structure extending from Lot 45, subject to Berkeley Point's approval. However, that right expired on January 1, 1975. In 1990, the Borough acquired title to the ten-foot-wide strip of tide-flowed land adjacent to Lot 45. The Borough has full ownership of that

land, and it has no legal obligation to permit any adjoining property owner to build a dock, pier, or other similar structure on the Borough's property.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0601-17T3