**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4836-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANGEL L. RIVERA,

     Defendant-Appellant.

_____

Submitted May 1, 2019 – Decided May 22, 2019

Before Judges Nugent and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 16-06-0556.

Helmer, Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for plaintiff (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his suppression motion, defendant Angel L. Rivera pled guilty to second-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(b)(2), and second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1), and was sentenced to five years in prison, with a three-and-one-half year parole bar. As permitted by the terms of the plea agreement, defendant appeals from his conviction, focusing on the denial of the suppression motion.

On this appeal, defendant presents the following points of argument for our consideration:

> I.    INFORMATION IN THE SEARCH WARRANT SHOULD NOT HAVE BEEN CONSIDERED IN DETERMINING WHETHER THE DETENTION AND SEIZURE WITHOUT A WARRANT WERE VALID
>
> II.   THE PROLONGED DETENTION OF DEFENDANT'S CAR WAS NOT JUSTIFIED BY THE TESTIMONIAL EVIDENCE PRESENTED BY THE STATE AT THE SUPPRESSION HEARING
>
> III.  THE INFORMATION DID NOT PROVIDE REASONABLE SUSPICION JUSTIFYING THE CONTINUED DETENTION OF DEFENDANT WHILE A DOG SNIF[F] WAS CONDUCTED
>
> IV.   DEFENDANT'S CONSENT TO SEARCH WAS NOT VOLUNTARY
>
> V.    EVEN IF THE CONSENT IS DEEMED VALID, LAW ENFORCEMENT EXCEEDED THE SCOPE OF

2

THE CONSENT BY INVADING THE STRUCTURAL INTEGRITY OF THE MOTOR VEHICLE

In reviewing the denial of a suppression motion, we defer to the trial court's factual findings if they are supported by sufficient evidence. State v. Hubbard, 222 N.J. 249, 262 (2015). However, we engage in de novo review of the trial court's legal interpretations. Id. at 263. After reviewing the motion record, we conclude that the police did not have the reasonable and articulable suspicion needed to prolong defendant's roadside detention for the purpose of having a trained police dog sniff his vehicle for drugs. We also conclude that defendant's written consent to the search of his car was the product of the unconstitutional prolonged detention. The search warrant, pursuant to which the police performed an additional search of defendant's car and eventually found contraband, was likewise the fruit of the unlawful detention. Accordingly, we reverse the order denying the suppression motion.

I

The following facts are derived from the motion record. On March 16, 2016, at about 10:15 p.m., Vineland Police Officer James Day observed a 2005 Toyota Avalon with its driver's side rear brake light not operating. Defendant was driving the car, which was registered to his girlfriend. Officer Day pulled

the car over due to the traffic violation. When Day approached the car to speak with the driver, he recognized defendant.[1] Officer Day told defendant why he pulled him over, and defendant acknowledged the brake light was out. Defendant provided Officer Day his license, registration, and proof of insurance. The officer observed the interior of the vehicle using his flashlight but did not see anything suspicious. Officer Day did not smell an odor of CDS, and defendant was cooperative through the conversation. At that point, two additional officers arrived on the scene as backup.

Officer Day performed a driver's license check and a warrant check. Defendant's license was valid, and there were no warrants out for his arrest. At some unspecified point during the stop, Sergeant Shaw arrived with his canine unit, and Officers Selby and Maslanich also arrived.

Officers Selby and Maslanich told Officer Day that confidential informants had told them that defendant was "currently selling large quantities of heroin and cocaine" in Vineland. At the suppression hearing, Office Day was unable to recall anything more specific concerning his conversation with those two officers. Neither officer was called to testify at the suppression hearing. However, during Day's testimony, the prosecutor asked him about a warrant

---

[1] There was no testimony explaining how Day knew defendant.

A-4836-17T1

affidavit he had signed the day after the stop, and the affidavit was introduced in evidence.

After receiving the information from Selby and Maslanich, Officer Day asked defendant for his consent to search the car. Defendant responded, "what does that have to do with my brake light being out?" and refused to consent. After defendant declined consent to a search, Sergeant Shaw performed a canine "sniff" test around defendant's vehicle, searching for evidence of narcotics. Sergeant Shaw told Day that the dog "hit," indicating a positive reaction to narcotics, near the front driver's side headlight.

Based on the positive dog sniff, the officers searched defendant, recovering $1,138 in cash. They then again asked defendant for his consent to search the car, indicating if nothing was found he would be permitted to leave. Defendant then signed a consent to search form. During the search, Officer Maslanich found an inconsistency in the back panel of the front passenger seat. The officer pulled the panel away from the seat to look into the interior of the seat and saw pieces of rice. According to Officer Day, rice can be used to keep heroin dry. The officers stopped the search, seized the car, and applied for a search warrant, supported by Day's affidavit. During a search the following day,

5

the police found a handgun, ammunition, and heroin in a hidden compartment in the front passenger seat.

II

We begin our legal analysis by addressing defendant's challenges to the dog sniff and the warrant affidavit.  In Rodriguez v. United States, 135 S. Ct. 1609 (2015), the Supreme Court drew a clear line of demarcation between a dog sniff that prolongs an otherwise-routine traffic stop and one that does not prolong the stop.  If a police officer detains a suspect for a longer time than is reasonably required to complete the traffic-related inquiry, the delay requires a separate justification apart from the alleged traffic infraction.

"An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop.  But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 1615.  "The critical question . . . is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop.'" Id. at 1616 (citation omitted). See  State v. Dunbar, 229 N.J. 521, 524 (2017) (adopting the federal standard "barring unnecessary delays for the purpose of canine sniffs").  Thus, if the process of getting the dog to the scene and conducting the sniff prolongs the

A-4836-17T1

stop, the court's inquiry must turn to whether the officer had reasonable suspicion to detain the driver based on facts other than the traffic infraction. State v. Nelson, __ N.J. __, __ (2019) (slip op. at 14); Dunbar, 229 N.J. at 525.

In this case, the State does not deny that the stop was prolonged but argues that Officer Day had reasonable suspicion that defendant was engaged in selling drugs, based on information Day received from Officers Selby and Maslanich. As set forth in the search warrant affidavit Day prepared later on, those officers' knowledge was derived from two confidential informants (CIs). Based on our review of the suppression hearing, we find no abuse of discretion in the trial judge admitting Days' affidavit in evidence. After a colloquy with the trial judge, defense counsel waived his objection to the introduction of the warrant affidavit. And, as significantly, defense counsel had the opportunity to cross-examine Day about the affidavit. Hence, defendant's reliance on State v. Atwood, 232 N.J. 433, 446-48 (2018), is misplaced here. However, that does not end our inquiry.

There was no testimony about how long the stop lasted or whether Officer Day was otherwise finished with the traffic-related portions of the stop before the two back-up officers and Shaw arrived. However, in a colloquy with the trial judge, the prosecutor admitted that the search was extended, and she argued

that "what forms the basis of [the extension] is the extra information [Day obtained] from Officer Selby and Officer Maslanich." The prosecutor also relied on the search warrant affidavit, describing the information Selby and Maslanich had obtained from the CIs.

Day certainly had the right to rely on information provided by fellow officers. State v. Crawley, 187 N.J. 440, 457 (2006). However, in challenging the reasonable basis for the investigative detention, defendant was entitled to challenge the source of those fellow officers' knowledge. Id. at 457-58. See State v. Handy, 206 N.J. 39, 47-48 (2011). As the Court stated in Crawley:

> It is understood "that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." . . . For example, if the dispatcher in this case had been provided adequate facts from a reliable informant to establish a reasonable suspicion that defendant was armed, common sense tells us that the dispatcher had the power to delegate the actual stop to officers in the field. On the other hand, if the information received by the dispatcher or headquarters fell short of the suspicion required by law for an investigatory stop, the fact that Officers Williams and Milton relied in good faith on the dispatch would not make the stop a constitutional one. Ultimately, the State must prove that a warrantless, investigatory stop was based on reasonable and articulable suspicion, and

8

failing that any evidence obtained as a result of an unconstitutional stop must be suppressed.

[187 N.J. at 457-58 (citations omitted).]

As our Supreme Court recently held, "[i]n determining whether reasonable suspicion exists, a court must consider 'the totality of the circumstances — the whole picture.'" Nelson, slip op. at 15 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)). Looking at the "whole picture" here, the critical question is, assuming the truth of Day's statements set forth in the search warrant affidavit, did the information from the CIs give Day or his colleagues the reasonable suspicion necessary to detain defendant for purposes of the dog sniff? Put another way, viewed wholly apart from the traffic infraction, would the CIs' information have justified the police in detaining defendant in order to conduct an investigatory stop? We conclude it would not.

The CIs told the police that defendant was selling large amounts of drugs in the City of Vineland. One CI told Officer Selby that defendant was "currently trafficking heroin and cocaine within the city of Vineland . . . within the last week of February 2016." Another CI told Officer Maslanich that defendant "has been and still is selling a large quantity of heroin and cocaine within the city of Vineland" in "the week of March 1 through March 8." The affidavit described the ways in which the CIs had proven reliable in the past in other cases.

However, the affidavit was devoid of any other details about this case, such as the factual basis for either CI's knowledge about defendant's activities, whether defendant was allegedly selling drugs from his car or from a house, a description of the car defendant drove, or whether he was known to transport the drugs himself. [2] See State v. Walker, 213 N.J. 281, 291 (2013); State v. Zutic, 155 N.J. 103, 113 (1998). The CIs' information did not approach the specificity found sufficient in other cases such as State v. Birkenmeier, 185 N.J. 552, 561 (2006).

Neither Selby nor Maslanich testified at the suppression hearing, so there was no evidence of further details they may have received from the CIs. Unlike Nelson, in which the officers observed multiple suspicious circumstances to corroborate an informant's tip, here Day did not provide any additional information to support a reasonable suspicion that defendant could have drugs in his car. See Nelson, slip op. at 5-6. For example, Day did not testify that he

---

[2] As previously noted, the affidavit was submitted in support of a search warrant for defendant's car. By that time, the police already had evidence of the positive dog sniff and had discovered the probable "trap" in the front passenger seat. Perhaps the affidavit contained so little detail about the CIs' observations because it was not thought necessary to obtain the warrant. However, for purposes of the suppression hearing, detail about the CIs' information was critically important, as it was the only possible justification for the investigative detention.

smelled CDS or that defendant was unaccountably nervous. According to Day, defendant was calm and cooperative.

In upholding the dog sniff, the motion judge relied on State v. Leggette, 441 N.J. Super. 1 (App. Div. 2015), rev'd on other grounds, 227 N.J. 460 (2017). However, in Leggette, and unlike this case, the officer had reasonable grounds to detain defendant based on the strong smell of burnt marijuana on the porch where defendant was standing. 441 N.J. Super. at 28-29. In this case, the bald, uncorroborated assertions by the two CIs were constitutionally inadequate to justify prolonging what was otherwise a routine traffic stop for a broken tail light.

At a hearing on a motion to suppress, the State must prove by a preponderance of the evidence that the stop, or its extension, was reasonable. "The State has the burden of proof to demonstrate by a preponderance of the evidence that the warrantless seizure was valid." State v. O'Neal, 190 N.J. 601, 611 (2007); Atwood, 232 N.J. at 437-38. In this case, the State simply failed to meet its proof burden.

Clearly, defendant's consent to the search of his car, which he gave only after the unlawful detention and the dog sniff, was "the product of the 'exploitation' of the unlawful . . . detention." State v. Shaw, 213 N.J. 398, 414

11

(2012) (citations omitted); see also State v. Carty, 170 N.J. 632, 647 (2002).  It cannot serve as an intervening circumstance that would "purge[] the taint" from the eventually-discovered contraband.  Shaw, 213 N.J. at 421; State v. Smith, 155 N.J. 83, 101 (1998).  The search warrant suffers from the same constitutional infirmity, since it relied heavily on the dog sniff and the resulting partial search of the car.  See Atwood, 232 N.J. at 449.  Suppression of the evidence is required.  Shaw, 213 N.J. at 422.

Accordingly, we remand to the trial court to enter an order granting defendant's suppression motion and for further proceedings consistent with this opinion.[3]

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In light of our disposition of the appeal, we need not address defendant's remaining arguments.

A-4836-17T1